### THE MARTIN KALBFLEISCH.

#### PENDLETON et al. v. THE MARTIN KALBFLEISCH et al.

(Circuit Court of Appeals, Second Circuit.   April 18, 1893.)

TOWAGE—NEGLIGENCE—IMPROPER PILOTAGE—WHO LIABLE.

C. chartered a schooner to take on cargo, without guarantying any depth of water, nor agreeing to put a pilot on board to carry her out to sea, nor reserving any control over the vessel. The master of the schooner employed a tug to take her out to sea, and, upon the request of C. or his agent, a pilot was put on the tug. The schooner was stranded on a bar, and lost, for want of proper pilotage. *Held*, that the pilot was the servant of the tug, and not of C., and that C. could not be held liable because the pilot was employed upon his insistence or request, or because the pilot was the captain of a boat in the employ of C.

Appeal from the District Court of the United States for the Eastern District of New York.

In Admiralty. Libel by Winfred S. Pendleton and others against the steam propeller Martin Kalbfleisch and B. Frank Coe, respondents. The libel was dismissed below without an opinion, and libelants appeal. Reversed.

W. W. Goodrich, for appellants.

H. D. Hotchkiss, for appellee Coe.

J. F. Mosher, for appellee Kalbfleisch.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. This suit was brought to recover for the total loss of the schooner Stella N. Kenyon, which ran on a quicksand bar while being towed on a hawser from Barren island, through Rockaway inlet, on December 10, 1890. The schooner had been chartered by respondent Coe to load a cargo of fertilizers at Barren island to a depth of 14 feet, for a voyage to Savannah. The charterers did not guaranty any depth of water, nor agree to put a pilot aboard the schooner to pilot her to sea, nor reserve any control whatever over the movements or navigation of the libelants' vessel. Having completed his loading, the master of the schooner employed the steam propeller Martin Kalbfleisch to tow her to sea. Thereupon, and before she left, discussion was had between the master of the schooner, the master of the tug, and one Fairchild, the agent of the respondent Coe, as to the propriety of her undertaking to cross the bar which lay between Barren island and deep water without the aid of an additional pilot. As the result of such discussion, one George Rohde was sent aboard the Kalbfleisch, took the wheel, and undertook the piloting over the bar. Rohde was a licensed pilot, and, so far as appears, a competent one. He was in Coe's employment at Barren island as captain of a small boat running between that place and Canarsie. The witnesses who testify to the discussion which led to the employment of Rohde do not entirely agree in their statements. For the schooner it is contended that Coe "insisted upon putting the pilot on board," and that therefore, as the loss occurred while under Rohde's piloting, and as Rohde was Coe's servant, Coe is liable.

Upon this branch of the case we are unable to assent to the libel-ants' proposition. Coe had no power of control of the schooner; no right or authority in any way to interfere with her movements. However strenuously he may have urged the employment of an additional pilot, the acceptance of such pilot was in the end wholly the act either of the schooner's master or the tug's, and, when employed, Rohde became the servant of the vessel, engaged solely in the transaction of her business, and not at all in the transaction of the business of respondent Coe. The circumstance that Rohde was in the general employment of Coe makes no difference. Touching the business in hand, he was the servant of his immediate employer. There is no question of bailment in the case. The schooner remained in the possession and under the control of her own master. Her management and navigation were at no time committed to the respondent Coe, and he exercised no authority over her. Nor is Coe responsible for any carelessness or negligence of Rohde as pilot of the tug, on any theory that the tug accepted his services because of Coe's insistence. He had no control over the tug; no authority to select its servants. The acceptance of Rohde as pilot, and the turning over of the wheel to him, were in the end the voluntary acts of the master of the tug, however much the latter may have objected, or Coe insisted. Although, in the general employment of Coe, Rohde, when he undertook to pilot the tug upon the procurement or with the assent of her master, who alone had the right to so employ him, was engaged in an independent service, over which Coe had no control. For his negligence of that service the particular employer whose business he was engaged in, and not the general employer, who had no concern with it, would be responsible. He was the servant of the tug, and could not be at the same time, and in the same business, the servant of both. The law does not recognize a several liability in two principals. We are unable to find any principle of law on which to hold the respondent Coe liable.

The Kalbfleisch, by her contract to tow the schooner into deep water, assumed liability for any carelessness or negligence of those employed by herself to do the work. The employment of Rohde as pilot was in the end the act of the master of the tug. He was under no obligation to employ Rohde, nor to yield up his wheel to him, even though by so doing he would please the master of the schooner. The evidence does not make out a case such as those cited upon the argument, where the pilot of the tow directs the movements of both vessels, (the tug merely furnishing the motive power,) and remains under the control of the master of the tow, who can displace him from the wheel should his incompetency be demonstrated. The testimony strongly indicates that the accident happened because a buoy intended to indicate deep water had shifted its position, and at the time marked the shoalest part of the bar. Such shifting was apparently unknown to Rohde, but was known to those on the Kalbfleisch, which had touched bottom at the same place, with another tow, a few days before. But, however that may be, it is averred in the libel, and admitted by the an-

swer of the Kalbfleisch, that "the grounding of the schooner was occasioned * * * by the negligence and carelessness of Rohde;" and, as he was the servant of the tug, she must respond for the consequent damage.

The decree of the district court is reversed, and the case remanded to said court, with instructions to dismiss the libel as to Coe, and to decree in favor of the libelants against the Kalbfleisch for damages. Costs to the libelants against the Kalbfleisch in both courts, and costs of both courts to Coe as against the libelants.