## THE LEADER.

(District Court, S. D. New York. December 1, 1908.)

SHIPPING (§ 39*) — CHARTER PARTY—CONSTRUCTION—RESPONSIBILITY FOR ACTS OF PILOT.

The fact that a time charter provided that the charterer should "provide and pay for" pilotage and port charges did not make the pilot the agent of the charterer for whose negligence it was liable to the owner, but his acts were acts of navigation for which the entire responsibility rested on the owner.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 141; Dec. Dig. § 39.*]

In Admiralty.

Libel by the owner of the steamship Russian Prince to recover damages for injuries sustained by said steamer by running aground in Newtown creek on the afternoon of January 30, 1905. The steamer was chartered to the respondent the Munson Steamship Line for five months from January 16th, to carry cargoes between different ports in the United States and South America. The charter provided that the charterer should provide and pay for, among other things, all pilotages and port charges. On January 30th, the steamer, after discharging part of her cargo near the entrance to Newtown creek, was ordered by the charterer to proceed up the creek to discharge the remainder. The charterer sent the steamtugs Leader and Rambler to assist the steamer, and Fernald, the captain of the steamtug Leader, a licensed harbor pilot, went on board the Russian Prince to act as pilot. The Russian Prince proceeded under her own steam, with the steamtug Leader attached to her bow by a hawser, and being drawn through the water by the movement of the steamer. The Rambler did not put out any line to the steamer until after the accident. While proceeding up the creek, the steamer ran aground.

Convers & Kirlin (J. Parker Kirlin, of counsel), for libelant.

Wheeler, Cortis & Haight (John W. Griffin, of counsel), for Munson Steamship Line.

Wing, Putnam & Burlingham (Charles C. Burlingham, of counsel), for steamtug Leader.

HOLT, District Judge (after stating the facts as above). This was a time charter in the usual form. The fact that the charter provided that the charterer should "provide and pay for" pilotage and port charges did not, in my opinion, under the authorities, make the pilot the agent of the charterer. The acts of the pilot were acts of navigation. The owners were responsible for the entire navigation of the ship. The Martin Kalbfleisch, 55 Fed. 336, 5 C. C. A. 120; Bramble v. Culmer, 78 Fed. 497, 24 C. C. A. 182; Worrall v. Davis Coal & Coke Co., 122 Fed. 436, 58 C. C. A. 418; The Santona (D. C.) 152 Fed. 516. I think, therefore, that no recovery can be had against the Munson Steamship Line.

The evidence satisfies me that the steamtug Leader, from the time that the Russian Prince weighed anchor off the Poorhouse Flats until she stranded, had nothing to do with the navigation of the steamer. She had a bowline fast, but she was not towing the steamer or using her machinery at all. The steamer went across under her own steam. The Leader was there ready to be used, like the Rambler, but she had no more to do with the movement of the steamer than the Rambler. I think, therefore, that no negligence can be imputed to the tug as such. Fernald was acting as pilot of the Russian Prince as well as master of the steamtug. He was paid separately as pilot. If the stranding of the steamer was due to the negligence of any one, it was to that of Fernald, but, as he is not a party to this action, it is unnecessary to determine whether he was negligent or not.

My conclusion is that the libel should be dismissed, with costs.