### WORRALL v. DAVIS COAL & COKE CO. et al.

(Circuit Court of Appeals, Second Circuit. April 16, 1903.)

No. 90.

**1. SHIPPING—LOADING—DAMAGE TO VESSEL—LIABILITY OF CHARTERER—DUN-NAGE.**

Upon the facts stated in the opinion, *held*, that the charterers of a vessel were not liable to her owners for injuries received by the vessel, while under charter, caused by loading her with iron ore, when her hatch coamings and adjacent parts were not properly protected, through the default of her master: the master being the agent of the owners and in charge of the navigation of the vessel.

Appeal from the District Court of the United States for the Southern District of New York.

For opinion below, see 113 Fed. 549.

J. Parker Kirlin, for appellant.

Harrington Putnam, for appellees.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

WALLACE, Circuit Judge. This is an appeal from a decree dismissing the libel in an action brought by the master of the steamship Acanthus to recover damages for the breach of a charter party made between the owners of the vessel and the Davis Coal & Coke Company. By the terms of the charter party the vessel was hired at a monthly compensation for a specified time, with a full complement of officers, seamen, engineers, and firemen, and the whole reach of the ship's hold, decks, and usual places of loading accommodation were to be at the charterer's disposal, reserving only proper and sufficient space for ship's officers, crew, tackle, furniture, provisions, stores, and fuel. The owners undertook to maintain her in a thoroughly good and efficient condition in hull and machinery for and during the service, and the charterer undertook to pay the charter hire until her delivery to the owners in like good order and condition as when received. After the steamship had been delivered to the charterer, and while she was being loaded with a cargo of iron ore, she sustained considerable damage to her hatch coamings and other parts, as is alleged, by reason of the careless and negligent manner in which the cargo was loaded aboard. It appeared that some of the hatch coamings were broken down, the strong backs which supported the hatch covers were broken and bent, one of the ring bolts in the hatch coamings was broken out, some of the stiffening angle bars surrounding the shaft tunnel were broken and bent, one lower deck hatch coaming was forced out of line, and her cargo batten between-decks and in the lower hold abreast of the hatches were broken. In consequence of these injuries the master was informed by Lloyd's surveyor, after she had discharged her cargo, that she would not be allowed to leave port unless repaired. The cost of these repairs and the charter hire during the period occupied in making them are the damages claimed as ensuing from the breach of the charter party.

The assignments of error are all directed to the alleged errors of the court below in exonerating the Davis Coal & Coke Company from responsibility to the libelant. Its responsibility depends upon the obligations assumed by it under the charter party, and whether the injuries and subsequent detention are not attributable to the neglect of proper precautions on the part of the master of the steamer at the time of loading. These injuries could have been prevented if the master had protected his vessel by shielding the injured parts from the falling ore by appliances which were frequently used on vessels while being loaded with similar cargo at the same place, such as old chains and planks for covering the coamings and shaft tunnel, and dunnage at the bottom of the hold.

Besides the provisions in the charter party which have been referred to, the instrument contained others which bear upon the question whether it was obligatory upon the charterer or the owners to supply and use these appliances. One clause provides that the charterer shall "provide necessary dunnage and shifting boards, but owners to allow them the use of dunnage and shifting boards already aboard the steamer." Another clause provides that the charterer shall pay for all the coal, port charges and pilotages, agents' com-

missions, consular charges, and "all other charges whatsoever," except those before stated. Another clause is:

"The captain (although paid by the owners) shall be under the orders and direction of the charterers as regards employment agencies or other arrangements; the charterers hereby agree to indemnify the owners for all consequences or liabilities that may arise from the captain's signing bills of lading or otherwise complying with the same."

It is not open to doubt that it was in the contemplation of the parties that the owners should navigate the vessel for the charterer as directed, and be responsible for any faults of navigation. It is insisted, however, for the appellant that the contract also contemplated that the master should be solely the agent of the charterer in performing those duties incident to loading and discharging her cargo, and under the direction of the charterer in respect of everything except the manner of navigating the vessel.

We are unable to assent to the proposition that the master was in such sense the agent of the charterer that he is not to be considered as sustaining any duty to the owners in doing those things while the vessel was in the possession of the charterer which its safety and preservation from unnecessary injury required to be done. The agency clause places him under the direction of the charterer as regards the business engagements the latter may choose to enter into for the employment of the vessel, but not under the charterer's orders in the immediate navigation and care and custody of the ship. The owners' undertaking to maintain the vessel in a thoroughly efficient condition at all times during her employment is inconsistent with any other conclusion. We cannot doubt that it was not only his right, but his duty, to use the dunnage and shifting boards presumably aboard the steamer for the purpose of protecting her, as far as practicable, from rough usage and injury in receiving cargo.

The master was aware of the risk of injury to which the steamer would be subjected by taking the particular cargo which injured her. On a previous occasion during the existence of the charter she had received some slight injury by loading her with a similar cargo at the same place. If the chains and planks with which the vessel may be assumed to have been supplied were insufficient to protect her against risk, others could have been obtained at a moderate outlay, and should have been obtained by him; and if he had done so it would have been his right to look to the charterer for repayment under the provisions requiring them to pay "all charges whatsoever" incurred in the use of the vessel, except those which the owners had specifically agreed to bear. In his opinion in the court below the district judge said:

"It is evident from what the master ascertained upon the first voyage that he did not consider the proposed use of the vessel as improper, and it was incumbent upon him to take adequate means to adapt her to the contingencies of the trade. If he had done so, and endeavored by some proper means to evade or minimize the danger of damage, and it nevertheless had occurred, he would now be in a better position to assert the claim of negligent loading."

With these observations we agree. The law does not permit a party to enhance his claim for damages against another for a breach of contract by his own neglect. It would be inequitable, as well as repugnant to this legal rule, to compel the Davis Coal & Coke Company to pay the considerable claim in the present case, when all damage could have been avoided by the exercise of common good judgment and prudence on the part of the master.

The decree is affirmed, with costs.