BULL et al. v. NEW YORK & PORTO RICO S. S. CO. et al.

NEW YORK & PORTO RICO S. S. CO. et al. v. BULL et al.

(Circuit Court of Appeals, Second Circuit. January 12, 1909.)

Nos. 40, 41.

**1. SHIPPING (§ 54\*)—CHARTERS—LIABILITY OF CHARTERER FOR INJURY TO VESSEL.**

A charterer, charged with the duty of discharging the vessel, undertook to unload boilers weighing some 17 tons each, for which the vessel had no sufficient tackle, by using the mast to support the boom upon which the weights were swung. An attempt was made to reinforce it by preventer stays, but by reason of their insufficiency the mast buckled and broke. *Held*, that the charterer was liable for the damage done to the vessel, and was not relieved from such liability by the employment of the master and mate to take charge of the work.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 220; Dec. Dig. § 54.\*]

**2. ADMIRALTY (§ 119\*) — APPEAL — DISPOSITION OF CAUSE — FAILURE OF PARTY TO INTRODUCE EVIDENCE.**

It is the well-settled practice in the admiralty courts for both parties to put in their evidence before the case is submitted to the court for decision; and where a motion to dismiss the libel, made by respondent at the close of libelant's evidence, is sustained, and the decree is reversed on appeal, the case will not be sent back for a new trial, but a decree will be directed for libelant.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. § 776; Dec. Dig. § 119.\*]

Appeals from the District Court of the United States for the Southern District of New York.

The second of these appeals is from a decree for $1,914.02 entered in the District Court in favor of charterers of the steamship Mae on claims for hire paid and not earned, coal in bunkers, etc. No reason for disturbing it is found in the record. The first appeal is from a decree of the same court dismissing a libel by owners against charterers to recover for damages sustained by reason of alleged improper use by charterers of one of the masts of the said steamship to discharge certain steam boilers, weighing some 17 tons apiece, in the open roadstead at Pattilas.

J. Parker Kirlin, for appellants.

Wallace, Butler & Brown (Frederick M. Brown, of counsel), for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

PER CURIAM. The general scheme and plan of the charter party was the same as that of the well-known "government form" charter, except that it contained no provision limiting the ropes, falls, slings, and blocks, which the shipowners are bound to provide, to such as are appropriate for handling weights up to two tons, and did contain the following provision:

"(21) That the charterers shall not be responsible for losses incurred by reason of the default or neglect of the pilot, master, or crew in the navigation or management of the ship including damages by collision; but no claim to be made against owners for loss of cargo."

The boilers were loaded in New York from lighters, being lifted aboard by a special derrick lighter provided by charterers, all without use of any of the ship's appliances. Evidently anticipating that the ship's tackle would be insufficient for the task of handling these unusual weights, the charterers had the vessel call at San Juan, Porto Rico, for the sole purpose of taking on board extra blocks, falls, ropes, slings, and other tackle including a special boom. Although they had a stevedore there who was skilled in handling such heavy packages, they did not ship him, and when they arrived at destination undertook to conduct operations with the captain in charge, to whom they paid an extra gratuity for undertaking the job. No derrick having been shipped, the mast was used for that purpose, and efforts were made to reinforce it with extra preventer stays. Partly because rope instead of wire stays were used, partly because they were not scientifically placed to resist strains, whose directions varied as the boom swung outboard, the shackle to which the regular shrouds were attached elongated and carried away, and the mast buckled, broke, and fell overboard.

An examination of the record fails to satisfy us that there was any defect or unseaworthiness in the shackle or the mast. Without reinforcement they could not handle such an exceptional weight, increased greatly by its position at the end of the boom. But no one anticipated or expected that they could, as was evidenced by the efforts made to secure them before the work of hoisting out was begun. That work was the work of the charterers, and called for the exercise of good judgment and great care. They cannot be relieved from a failure to exercise either by reason of the circumstance that they got the master and mate to take charge of the job. The trial judge, who decided the case orally at the close of the testimony, evidently was of this opinion, but felt that he was constrained by a former decision of this court in the case of The Acanthus (Worrall v. Davis Coal Co., 122 Fed. 436, 58 C. C. A. 418) to hold that the captain was acting as agent of the owner in arranging the apparatus to be used in landing the boilers.

That case, however, does not, as we understand it, go to that extent. It was a peculiar one. The vessel was being loaded at Daiquiri with iron ore, which was discharged from a skeleton iron pier provided with chutes, from which large pieces of jagged rock tumbled from a considerable height into the hatches. It was a method ill-adapted to vessels with 'tween-decks, as there was a constant tendency of flying pieces to strike the 'tween-deck and its hatch combings in passing down into the lower hold. It was perfectly practicable, however, to protect the exposed parts by old chains and planks with dunnage at the bottom of the hold. It was assumed in the Acanthus Case that there was plenty of such material on board, and if the supply was scant the master had learned on his first voyage (the claim arose on the second voyage) just what was needed, and under the terms of the charter could have procured what was required, and charged the cost to charterers. Instead of doing anything which mere common good judgment and prudence would dictate to protect the vessel while the charterers were loading her, he stood idly by and let the hatch combings and adjacent parts of

the deck be battered to pieces. We declined to hold that under the circumstances the master of the Acanthus was relieved from his duty to his owners to do what he could to protect the vessel from rough usage and injury in receiving cargo, which was being put aboard in the only way possible at Daiquiri—a way perfectly well known to both parties. We do not find the cases parallel, and think the decree should be reversed, with costs of this appeal.

The ruling was made upon a motion to dismiss the libel as against New York & Porto Rico Company, upon libelant's testimony only; counsel stating that he wished to reserve his right to offer proofs if the motion should be overruled. Since the motion was not overruled, nothing was saved by the reservation. It is well-settled practice in the admiralty courts, certainly in this jurisdiction, for both parties to put in their evidence before submitting the case to the court for its decision. We have no intention of sanctioning the common-law practice of sending causes back for a new trial, only to see them reappear again with a longer record, more or less modified from what was first presented.

The cause is therefore remanded, with instructions to enter a decree for libelants, with costs, with an order of reference to ascertain the amount of their damages, against which, when found, the amount of the decree in the other case may be offset.