### CHARLES KILLAM & CO. v. MONAD ENGINEERING CO.

(District Court, E. D. Pennsylvania. August 14, 1914.)

No. 59.

1. SHIPPING (§ 39*)—CHARTERS—DEMISE OF VESSEL—IMPLIED COVENANTS.

In contracts for the demise of vessels, there are implied, if not expressed, covenants on the part of the owner that she is seaworthy and fit for the service for which she is hired, and on the part of the charterer

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to return her in as good condition as when received, ordinary wear and perils of the sea, etc., excepted.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 141–148; Dec. Dig. § 39.*]

2. SHIPPING (§ 54*)—CHARTERS—NEGLIGENT HANDLING OF DEMISED BOAT BY CHARTERER.

Respondent chartered a lighter from libelant by a charter which amounted to a demise, to be used in carrying stone to a government work which respondent was constructing in Delaware Bay, but instead of using her for such purpose it took her to the work, where she was used as a floating warehouse, which was a more dangerous use owing to the exposed locality, and one for which she was not fitted. Some of the time she was anchored by the stern, her tiller was not lashed, and she was injured by the slashing of her rudder. At other times she was moored to the windward side of a platform, without fenders or other protection, and was injured by bumping against it. During a gale she was anchored and, dragging her anchor, was drifting upon the foundation of an old lighthouse on which she would have been wrecked, when, by libelant's orders, she was taken away by a tug and not returned. *Held*, that her injuries were due to respondent's fault and negligence, and that it was liable for the cost of her repairs, and also for demurrage during the time they were being made; also that respondent's acts justified libelant in taking the boat away, and it could not be held liable for any delay caused to respondent thereby in the performance of its contract.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 219–221; Dec. Dig. § 54.*]

In Admiralty. Suit by Charles Killam & Co. against the Monad Engineering Company. Heard on libel, answer, and trial proofs. Decree for libelant.

### Findings of Fact.

The court finds the following findings of fact:

(1) Certain findings of fact which arise out of the evidence have not been made because not asked.

(2) On August 20, 1907 the libelant hired or chartered the lighter Roosevelt to the respondent for a period of from 25 to 28 days at $10 per day. The respondent agreed to deliver the lighter to the libelant at the end of her term of hire, at the port of Philadelphia, in as good condition as when delivered to respondent, wear and tear excepted.

(3) The lighter was hired for the purpose of being used in carrying stone from the Brandywine to a point over Cross Ledge Shoal in Delaware Bay, where the respondent was doing work for the United States.

(4) The libelant warranted the lighter to be in good condition and fit for the above-mentioned purpose for which she was hired. The lighter was delivered to the respondent under the contract of hiring on August 23, 1907, in a condition which fulfilled this contract of warranty.

(5) The lighter was not used by the respondent for the purpose for which she was hired but for the other and different purpose of being kept at Cross Ledge and used there as a floating storehouse for stowage of material and other articles. This was a more dangerous use than that for which the lighter was chartered, and involved the lighter in greater risk of loss or damage, and was a use to which she was not intended or fitted. At times the lighter was anchored off the Cross Ledge in an exposed and dangerous position where she was likely to encounter heavy weather and be subjected to heavy seas. At other times she was moored alongside of a platform or pier erected on part of Cross Ledge shoal and was kept upon the windward side, and because of this jammed and bumped against the platform or pier. By reason of this the lighter was strained and damaged and parts of her upper gear gouged and chafed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

(6) The libelant on September 18, 1907, and again on September 26, 1907, demanded of the respondent possession of the lighter to be given on or before September 30th. With this notice the respondent neglected and refused to comply. On the night of September 30, 1907, the lighter was anchored off the Cross Ledge at a point where she had the stone foundations of an old lighthouse directly on her lee. She was improperly anchored stern foremost with her tiller unshipped or unlashed and her rudder slashing in the waves, producing a strain upon her. The wind during the night rose to a gale, and on the morning of October 1st the lighter began to drift to leeward, dragging her anchor. She was taken in tow by a tug which had been sent for her by the libelant and towed to Philadelphia. Had she not thus been rescued by the tug, she would have drifted upon the stone pile referred to and become a total wreck.

(7) The lighter was damaged by the usage to which she was subjected, and by the further fact that parts of her woodwork had been removed and taken out and used by the respondent. The repairs necessary to restore the lighter to the condition in which she was at the time of her delivery to the respondent, less ordinary wear and tear, amounted to the sum of $425, including the expense of taking her to the most convenient place in which the repairs could be made.

(8) The lighter, at the time she was taken away by the tug, had on board material and property belonging to the respondent. The damage to the lighter was caused by the acts and negligence of the respondent in improperly subjecting her to strains and bumps and in not exercising proper care and avoiding causes of injury.

(9) The delay in the completion of the contract on which the respondent was engaged, and its failure to complete the same, was not due to any act of commission or omission on the part of the libelant, and was not due to the removal of the said lighter. So far as it is a question of fact, the removal of the lighter by the libelant was justified and necessary for her preservation, and no loss or damage resulted therefrom to the respondent. If the lighter had not been removed, both the lighter of the libelant and the material and articles on board of her belonging to the respondent would have been lost.

(10) So far as it is a question of fact, there is due from the respondent to the libelant the sum of $440 hire of the lighter from August 23d to October 5th, $60 for demurrage during the time the lighter was under repairs between October 5 and October 11, 1907, and $425 for repairs to the barge because of injuries resulting from the negligent acts of the respondent, including the expense of taking the lighter to the most convenient place for her repair.

### Conclusions of Law.

The court finds the following conclusions of law, so far as it has been asked to find the same:

(1) Certain conclusions of law which possibly might have been stated, not having been asked for, are not found.

(2) The respondent is indebted to the libelant in the sum of $440 for hire of lighter Roosevelt from August 23 to October 5, 1907, at $10 per day.

(3) Damage was sustained by the lighter through the negligence of the respondent while the lighter was in its possession, for which the respondent is responsible; the amount of the damage thus sustained being the sum of $300.

(4) The respondent is liable to the libelant for the further sum of $60, being demurrage for the time the lighter was laid up undergoing repairs.

(5) The libelant is entitled to recover from the respondent the total sum of $925 on the findings of facts as made by the court, to which findings the court was asked to restrict itself by the parties to the cause.

(6) The libelant is entitled to a decree for costs.

Lewis, Adler & Laws, of Philadelphia, Pa., for libelant.
Harris S. Sparhawk, of Philadelphia, Pa., for respondent.

DICKINSON, District Judge (after stating the facts as above). This case was heard and argued with Monad Engineering Co. v. Charles Killam & Co., 216 Fed. 444, No. 74 of 1907 in admiralty. The

two cases grow out of the same transaction between the parties, and, although not in form consolidated, are in effect one and the same case, made up of claims and counterclaims.

Specific findings of facts and conclusions of law, so far as the court has been asked to find the latter, are filed herewith.

The main facts, so far as necessary to an understanding of the issues involved, are few and simple. The Charles Killam & Co. hired by a demise contract the lighter Roosevelt to the Monad Engineering Company. The lighter was to be employed in carrying stone from the Brandywine to a locality in the Delaware Bay, known as Cross Ledge, where the Monad Company were doing some constructive work for the United States. The term of hiring was from 25 to 28 days, from August 20, 1907, the date of hiring. The rate was $10 per day. The man whom the Killam Company had on board the lighter as master left, and the Monad Company replaced him with a man of their own selection.

Instead of employing the lighter for the purposes for which she was hired, use was made of her as a floating warehouse or stowage boat by taking her to Cross Ledge and keeping her there. She was at times kept alongside of and moored to a platform, which had been there constructed, and at other times anchored near the platform. The place is a notoriously dangerous one, particularly at that time of the year when heavy weather and high winds from the northeast, southeast, and northwest are to be expected. The unavoidable risks which a boat of the description of this lighter in that locality would incur were increased by the way in which the boat was handled. She was kept lying at times on the windward side of the platform, without adequate protection either by fenders or other precautions to keep her off, with the consequent result that she was bumped against the platform and the pilings to which she was moored and was gouged and chafed by rubbing against projecting spikes. When she was anchored off, she was improperly anchored stern foremost with her tiller either unshipped or unlashed, and because of this her rudder slashed from side to side with a resultant strain upon her. Parts of the lighter were removed from her by the charterers and used in the construction of the platform referred to, and some of her tackle was removed or lost. A special danger and threat of the entire loss of the lighter was presented by the foundations of the old lighthouse being close aboard, and during prevailing storms directly to leeward, so that, if the lighter dragged her anchor, she would have drifted upon this obstruction and become a total wreck. Learning of the predicament in which she was placed, the Killam Company demanded her return, and, this demand not being complied with by the Monad Company, a tug was sent for the lighter, and she was removed from danger and restored to her owners. At the time the lighter was taken away, she was in part loaded with material belonging to the Engineering Company. The exigencies of the situation afforded neither opportunity nor time to unload her, and she was unloaded after she reached Philadelphia.

The original libel was filed to recover the hire of the lighter as agreed to be paid; demurrage for the time during which she was under repair, and the expenses to which her owners were put in preserving her from loss or further damage, and in restoring her to the

same condition of repair in which she was when hired. This demand was met by a counterclaim in the general nature of a set-off, which is based upon the averment that, by reason of the removal of the lighter and of the material which was on board of her, the Engineering Company were prevented from complying with the contract on work which they were engaged, and, in consequence, they had been subjected to loss and damage to an amount largely exceeding the claim of the owner.

The answer of the original libel denied responsibility for the damage to the boat, and averred further the counter allegation of unseaworthiness and unfitness for the work for which she was hired.

The court is relieved from passing upon some questions which suggest themselves as possibly arising out of the facts in this case and the relations of the parties to each other and to third parties in that we have been asked to pass upon the rights of the parties as determined wholly and solely by certain findings of fact which the court is asked by both parties to make. This reduces the questions involved to these mere questions of fact, and the case is therefore sufficiently disposed of by the formal findings which the court has made.

[1] No more is now necessary than to state the principles by which the court has been guided. One is that in contracts of this kind the owner of the boat warrants her to be seaworthy and fit for the use to which she is intended to be put. Another is the general principle that a bailee for hire is not responsible for loss or damage except such as may be brought about through his fault or by his negligence. This general principle is applicable to contracts for the hire or demise of vessels. It is usual for a charter party to contain a stipulation for or warranty of the seaworthiness of the vessel on the one side, and, on the other, a stipulation or covenant to deliver up the vessel in the same good order and condition as when originally delivered, ordinary wear and tear and perils of the sea, etc., excepted. Each and both of these covenants are, however, implied, whether expressed or not, so that, under the facts in this case, the findings of fact of express covenants are unimportant. Both covenants are, however, found in fact to have been made.

There is no denial other than the most purely formal one that the owner is entitled to a finding in its favor for the $440 hire of the lighter, and this finding, both as a fact and a conclusion of law, is therefore made without further discussion. It only remains to determine whether or not the damage or injury found to have been done to this lighter was a damage she had received antecedent to her contract of hire, was incidental to the ordinary and reasonably careful use of her in the employment for which she was hired, or was an injury due to the acts of the charterer for which it is responsible to the owners.

[2] We find as a fact and as a conclusion of law that the necessity for repairing the lighter was due to the acts of the charterer, and that it is responsible for the damage done to the boat and answerable to her owners for the amount expended to repair the damage. This is on the ground, both that the damage resulted from negligence and want of reasonable and proper care taken of the lighter on the part of the charterer and as a breach of the implied, and, as it has been found, the express, covenant to redeliver her to the owner in the condition in

which she was when delivered under the contract of hire.  This involves the further finding that the charterer is responsible to the owner of the lighter for the time she was laid up undergoing repairs.  This is upon the principle that the charterer of a boat is responsible to her owners for the demurrage accruing during the time she was laid up for repairs, if the charterer is responsible for the injuries which have made the repairs necessary.

This disposes of the whole of this branch of the case, except a finding of the amount of money damage involved in the repair item.  The bill of the owner and the circumstances attending the contraction of the bill have been somewhat seriously criticized by counsel for the charterer.  Indeed, chief stress has been laid upon this feature of the claim.  We have given much weight to all the observations of counsel upon this head, and have fixed the amount of the repairs at the sum of $300.  This leaves open for consideration only the counterclaim of the Monad Engineering Company.  The amount of the claim is large.  Here again we restrict ourselves to a mere finding of fact, both because the finding, being against the allowance of the claim practically and effectually disposes of all questions of law involved in it, but for the further reason that counsel on both sides have rested their cause upon the facts and have in effect limited the attention of the court to this single feature.  We dispose of it by finding that the loss or damage, as claimed to have been suffered, was not due to any acts of the Killam Company, and further that all that was done by the Killam Company was due to and rendered necessary by the conduct and acts of the charterer of the lighter, and that all that was done was necessary to be done in order to protect their property, and indeed inured to the benefit of the Monad Engineering Company, because our finding is that, if the lighter had not been rescued, she would have become a total loss, for which the charterer would have been responsible, and this loss would have involved the loss of the material on the boat, and the Engineering Company would have been deprived of its use.

The strong argument addressed to us by counsel justifies, and perhaps the vindication of the conclusion reached calls upon, us to discuss the case at what would otherwise be undue length.  Primarily, and ordinarily all through, the handling of a boat and the consequent responsibility for the results devolves upon the owner, whom the master represents.  There are certain elements of fact here, however, which justify the placing of responsibility for the damage done upon the charterer.  The Monad Company chose and placed the master in charge.  The boat was a lighter of the scow type without motive power or any adequate means of propulsion.  Her movements were at the mercy of the tugs of the charterer, and her master was helpless to do more than to ask and protest.  This latter function he seems to have performed to the uttermost.  The charterer was time and again warned by the man of their own choice of the risk of damage, but the warnings were unheeded.  Ordinarily the owner must carry the burden of risk involved in the employment of the boat.  Here again we are met with the fact that the boat was put to a more hazardous use than that for which she was chartered.  The risks she encountered and the damage she sustained, which she would otherwise have avoided, can

not therefore be held to be incidental to her employment in exculpation of the charterer. To hold the owner responsible for the consequences of a removal of the boat from the work, even if damage had in fact been caused thereby, would be to find a right in the charterer to use the property of another without the consent of the owner, and, under the circumstances of this case, to deny to the owner the right to reclaim his property when the term of hiring has expired, and to rescue it from the danger of almost certain loss.

We have reduced the amount of the repair bill. The owner is entitled to have only the damage beyond his own obligation to repair made good to him. This boat had not been caulked since she came to the present owner. In the usual course she might, and probably would, have been good for some time longer without the need of repairs. Nevertheless the carrying of stone out of small creeks and rivers and into the frequently heavy seas of the bay is rough work and trying on a boat of this type, and, had she been confined to her intended use, it is almost certain that at least some caulking would have been required. This, coupled with the fact of which there is some evidence that the boat was in better shape than when chartered, calls for some reduction for the part of the repairs for which the Monad Company is not responsible. It does not, however, justify the conclusion, which we are asked to reach, that the owners seized an opportunity to make ordinary repairs at the charterer's expense. The proof of this is that the most casual glance over the boat would enable any one to see that the repairs which were needed were, outside of some parts of the caulking and painting, not ordinary repairs. The damage from the collision with the schooner comes within the claim, because of the fact that this damage resulted from a risk to which the lighter should not have been exposed.

The legal principles stated are supported by the decided cases. Lake Michigan Co. v. Crosby (D. C.) 107 Fed. 723; Worrall v. Davis Co. (D. C.) 113 Fed. 549, affirmed in 122 Fed. 436, 58 C. C. A. 418.

We therefore find that the Killam Company are entitled to recover of and from the Monad Engineering Company the sum of $440 for the hire of the lighter Roosevelt, and the further sum of $60 for the time she was laid up for repairs, and the additional sum of $425 for her repairs, including all the expense of bringing her to a place in which the repairs could be made, making in all the sum of $925, together with interest and costs, and the form of a decree accordingly may be prepared by counsel and submitted for approval.