## CONNERS MARINE CO. v. McCLINTIC-MARSHALL CO.

### No. 12630.

District Court, E. D. New York.
June 22, 1932.

Courtland Palmer, of New York City, for libelant.

Duncan & Mount, of New York City (Russell T. Mount, of New York City, of counsel), for respondent.

GALSTON, District Judge.

The respective rights and obligations involved in this controversy must be measured by the agreement or charter party entered into November 7, 1930. The pertinent provisions are set forth in paragraph fifth: "Fifth: The party of the first part shall furnish with the tug, all lines and other necessary equipment including water, oil, coal, etc., and a crew of five men. The crew shall perform their duties to the entire satisfaction of the party of the second part and obey all orders given by the proper representatives of the party of the second part providing such orders do not endanger the safety of the tug, scows, carfloats or any other marine equipment, whether same is engaged in this operation or in any other river or harbor work. In the event the service at any time is unsatisfactory to the party of the second part, the same shall be corrected by the party of the first part, and if in the opinion of the party of the second part, the same is not corrected and corrected promptly, the party of the second part shall have the right to terminate this contract."

The respondent was engaged in constructing the roadway of the George Washington Bridge over the Hudson river from New York to New Jersey. To aid in the work, the respondent, by virtue of the agreement referred to, chartered the libelant's tug Arthur Conners and barges Everett Fowler and Sherry.

The libelant was to supply all equipment, water, coal, etc., and a crew of five men. It was to have a master on board of them at all times and to take care of anchor lights.

Paragraph seventh provided: "Seventh: Said tug shall be used as directed by the proper representatives of the party of the second part, in general to haul the railroad carfloats to the scows which are anchored in the stream, the carfloats being at the dock of the party of the second part. Said tug will also be required to shift and transfer the barges and carfloats from time to time in stream and to and from the docks of the party of the second part and to aid and assist in the mooring of barges from one position to another in the vicinity of the bridge, shifting anchors as may become necessary to hold the barges and carfloats satisfactorily in their position in the stream. In addition, the said tug shall be required to move workmen and articles suitable for placing on the boat from one side of the river to the other. Said tug shall also as directed be required to make trips to the vicinity of 158th Street, Manhattan, for passengers, freight, etc. In addition, said tug shall be required to perform as directed by the proper representatives of the party. of the second part any suitable tug service at the bridge site or within two miles thereof."

Paragraph sixth of the charter party provides, among other matters: "Anchors, anchor cables and the attachment of same on scows are to be furnished by the party of the second part (i. e. respondent) and are to be inspected by the party of the first part, and to be considered approved by them if they do not formally object."

The tug and barges were not delivered into the possession of the respondent, and the charter, therefore, was not a demise. The hiring was based on a ten-hour day, Monday to Friday, inclusive, and in consequence the continuous service of the vessels was not contemplated.

The libel alleges damages sustained by the steam tug Arthur Conners and the barge Everett Fowler. The damage to the former vessel is said to have been caused by the shifting of the anchors and anchor wires. Damage to the steam tug and the barge is also alleged to have been caused by negligently hoisting iron and steel from the car floats which lay

alongside of the barge anchored in the river and dropping such material or materials on the steam tug and the barge.

■ That there was damage occasioned to both the steam tug and the barge, arising out of the improper hoisting of materials from the car floats, was established at the trial. For such damage thus occasioned, the libelant is entitled to a decree.

■ But as to any damage alleged to have been occasioned to the steam tug as a result of obeying orders given by the respondent in respect to the shifting of anchors and anchor wires, no recovery should be had. The anchoring of the Everett Fowler was, it is true, effected by the tug in accordance with the determination of Fortune, the respondent's representative, who also determined the matter of the shifting of the anchors.

But it seems that if Captain Rohde was of opinion that Fortune's order to throw out anchor lines was likely to involve the safety of the tug, the libelant could and should have availed itself of that provision of article fifth of the charter party, which permitted it to ignore such an order. That Captain Rohde was concerned about it is undoubted, for he made a report to the president of the libelant company, Mr. Connors. It likewise appears that Mr. Connors had some casual talk with a representative of the respondent company; but at no time, either expressly or implicitly, did the libelant avail itself of its rights under paragraph fifth of the charter party. Certainly no formal protest was made by anybody representing the libelant. The continuance of work by the libelant under the orders given amounted to an acceptance of the situation as proper and an assumption of the risk involved. The case would then fall within the doctrine of Worrall v. Davis Coal & Coke Co. (C. C. A.) 122 F. 436, as involving the negligence of the master.

■ Damage resulting from the collision of the car float and the Everett Fowler on December 15, 1930, could be attributed to the respondent only on the premise that the respondent was responsible for the orders given with respect to the positioning of the anchors. From the view heretofore expressed on that question, I am of opinion that the respondent was not responsible.

■ Moreover, under the form of charter party, although providing that the master shall be under orders of the charterer, the owner and not the charterer is responsible for her navigation. The Volund (C. C. A.) 181 F. 643.

The libelant may have a decree for the damage sustained by the tug and barge resulting from falling materials, but not as to the other elements of damage alleged.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.