Salvatore **MISTRETTA**, Libelant,

v.

**S. S. OCEAN EVELYN**, her engines, hull, tackle, cargo and her appurtenances thereof, Ocean Transportation Co., Inc., and Maritime Overseas Corp., Respondents,

v.

The **UNITED STATES** of America, American Stevedores, Inc., Respondents-Impleaded.

No. 63–A–1224.

United States District Court
E. D. New York.

Aug. 24, 1964.

————◇————

Solomon J. Cohen, New York City, for libelant; Ernest Rassner, New York City, of counsel.

Pyne, Smith & Wilson, New York City, for respondent Ocean Transportation Co., Inc.; Walter L. Hopkins, New York City, of counsel.

Joseph P. Hoey, U. S. Atty., Brooklyn, N. Y., for United States of America; Louis E. Greco, David B. Brooks, New York City, of counsel.

Alexander, Ash & Schwartz, New York City, for American Stevedores; Alan H. Buchsbaum, New York City, of counsel.

ROSLING, District Judge.

Motion of respondent Ocean Transportation Co. (Ocean) for summary judgment in its favor and against libelant (Mistretta) dismissing the libel pursuant to Rule 58(b) of the Rules of Practice in Admiralty and Maritime Cases (Admiralty Rules) is denied. Cross-motion of libelant for summary judgment in favor of libelant and against Ocean on the issue of liability, and setting the action for trial for assessment of damages is likewise denied.

Motion of Ocean as respondent-third-party claimant pursuant to Admiralty Rule 58(b) insofar as it seeks summary judgment in the form of an interlocutory decree under Ocean's impleading petitions against American Stevedores, Inc. (Stevedore) and United States of America as respondents-impleaded in the event that summary judgment dismissing the libel were to be awarded said respondent is not passed upon as moot; and insofar as such motion seeks summary judgment declaring, in the event that the motion for judgment dismissing the libel is denied, that the impleaded respondents are and shall be liable to Ocean in the amount of any recovery which may be had by libelant against Ocean as well as in the full amount of said respondent's reasonable attorney's fees and costs and expenses in defending the libel is denied without prejudice. Such issue is reserved for disposition at the trial of the action.

Libelant and respondent declare in their opposing papers a specious [1] agree-

1. See infra pp. 90 to 92, fn. 6 for observations concerning the possible incompleteness of the factual statement by the parties upon a motion for summary judgment as justifying denial of such motion so that the plenary presentation of what one may reasonably anticipate in the way of proof in the context of what is alleged may be adduced upon a trial. Counsels' statement that they are not in dispute as to the facts does not reach the question whether what they agree upon is all that is material. Ocean's moving affidavit introduces its resume of the circumstances of the accident with the preamble that "[T]he depositions [of four witnesses whom it had deposed] and sketches [exhibits marked upon their examination] establish that the facts were as follows:"

Incorporating such recital in its brief by reference, respondent notes that "[T]he facts have been set forth in detail in the moving affidavit which recites the salient facts agreed upon by libelant and three other witnesses." The narrative of events is then adopted by libelant in the opening sentences of his brief wherein the following appears: "Respondent's memorandum demonstrates and libelant conceded that there are no material facts in dispute. In the absence of any material issue of fact, the case at bar is limited to questions of law." In his statement pursuant to Rule 9(g) libelant's attorney even more directly acknowledges that "[T]he respondent's version of the accident is not different than that of the libelant * * *"

The impleaded Stevedore from whom Ocean seeks a contingent indemnity, conditioned upon libelant's recovery of damages from Ocean, and unconditionally for the expenses of respondent's defense against the primary claim, professes to find much that is both relevant and in issue. Stevedore asserts in this connection that "most of these prevailing issues concern themselves with the duties, responsibility and knowledge of the re-

ment as to the facts, but are dissident in their view as to what inference of liability should be drawn from what is thus undisputed. For the purposes of the libelant-respondent motion and cross-motion what follows may accordingly be taken as evidentially established:

On the morning of November 26, 1962 Mistretta, a carpenter with about seven or eight other carpenters reported to the No. 4 lower hold (hold) of the S.S. Ocean Evelyn for the purpose of installing shoring or braces between Army conex boxes. These were to be loaded in the hold by longshoremen in the employ of Stevedore, under its stevedoring contract with Ocean, owner-operator of the vessel.[2] A conex box is a rectangular metal container about seven feet high, by six feet wide and eight feet long used for the shipment of Army[3] cargo. During the morning hours conex boxes had been

spondent, through its officers and/or agents aboard its vessel on the date and time of libelant's accident. In addition thereto, then the actual physical conditions prevailing aboard this vessel in the hatch where libelant was allegedly injured remain unresolved. In light of the fact that certain long-shoring operations were being undertaken at the time of this claimed accident, proof in this matter will entail the use of expert testimony with regard to the standard of conduct to be followed as well as custom and practice relevant herein it is readily apparent that these outstanding issues can only be resolved at the trial of this action * * * The aforesaid depositions of certain alleged witnesses conducted by respondent may be used only for the purposes of contradicting or impeaching the testimony of the said deponents in the event that they did appear as witnesses at the trial of this action. At the trial cross-examination of these deponents is permitted pursuant to the provisions of Rule 46(a) of the Admiralty Rule.

"The aforesaid depositions should not be utilized to conclude all the outstanding factual issues herein. There are many outstanding issues of fact herein which may only be resolved by testing the credibility of these and other witnesses and parties herein."

2. Par. Fourth of the libel alleges that Ocean "owned, operated, managed and controlled" the S. S. Ocean Evelyn. For answer to this allegation Ocean makes the following averment: "Admits that respondent owned and generally operated, managed and controlled the S/S Ocean Evelyn at the times mentioned in the libel. Denies that it operated, managed or controlled any spaces or equipment of the S/S Ocean Evelyn in any way related to the matters alleged in the libel."

3. The procedural difficulties created for the court by the parties when instead of satisfying the probative requirements of Admiralty Rule 58, the attorney for one litigant couples a candid concession of the accuracy of his adversary's statement of facts with an advocate's studied vagueness as to wherein in his adversary's diffuse documentation the matters conceded are to be located are here illustrated. How the conclusory allegation, the inferential, the argumentative in Ocean's moving papers may with assurance be winnowed by the court from that which is intended to be identified as findings on consent of the parties relative to the government's jural implication in the events in controvery is a question the answer to which is not with sufficient certainty to be found. This ambiguity provides an added reason for reserving the dependent issue of liability for trial.

The libel seeks no recovery from the government. It makes no reference to the Army in any respect nor is any mention made in Ocean's answer. The impleading petition against the United States is the first pleading to introduce the subject of the Army's involvement in the events, alleging that "[u]nder date of October 2, 1962 petitioner and the United States entered into a time charter party of the Ocean Evelyn * * * under which the United States assumed the obligations to properly load and stow all cargo to be carried for the United States on the S/S Ocean Evelyn. A copy of contract will be produced at trial."

What answer the government interposed does not appear, for the docket records none as having been filed with the Clerk nor has any copy, if answer was made, been supplied the court.

Ocean's admission in its answer to the libel of a continuing general operation, management and control has already been noted. (See supra fn. 2.)

Ocean's moving affidavit continues silent as to the legal nexus of the impleaded respondent with the events narrated, but its statement under Rule 9(g) of facts not issuable, surely ineligible for use as a

lowered into the hold by the ship's cargo gear. They were then detached from the ship's cargo falls and moved into the sides of the hold by a hi-lo machine owned by Stevedore and operated by one Scadding, a Stevedore employee. The port, starboard and aft sections or wings of the hold had been stowed by the longshoremen. The forward wing was almost completely stowed with boxes, but a space remained underneath the forward coaming of the 'tween deck hatch opening for the stowage of another conex box.

Mistretta's job had been to carry shoring lumber from a pile in the hold to the carpenters there. Shortly after 1:00 P.M. a conex box was lowered into the hold. Scadding, intending to push the container against another as part of the stowing procedure, backed his hi-lo against a corner of the box which had just been lowered. Mistretta at the moment had been positioned at the far side of the box and was thus invisible to the operator. Crushed against the adjacent box through such maneuver, libelant received the injuries for which this suit is brought.

Scadding testified upon his deposition that he had no one to guide or direct his movements nor to warn him of danger to other persons in the area incident to his operation of the hi-lo, although he could not see over the box into the space where Mistretta was. A second witness, Salzano, testified, however, in a somewhat conflicting version that there was another longshoreman guiding Scadding in certain of his procedures.

No ship's officers or crew members were in the hold at any "relevant" time and none issued any directions or instructions to any of the longshoremen or carpenters working in the hold. "[T]he lighting was concededly [4] adequate and

supporting document under Admiralty Rule 58, alleges that:

"At all material times, the Ocean Evelyn was under time charter to the United States of America, Military Sea Transportation service, under a time charter dated October 22, 1962, a copy of which will be handed to the Court as exhibit H on argument of this motion."

Parenthetically, it may be noted that the charter has not been submitted by movant to the court for consideration of its effect upon the matters here sub jud.

The Ocean's 9(g) statement further avers that "[a]t all material times American Stevedores, Inc. was performing stevedoring services under a contract with the United States of America, a copy of which will be handed to the Court as exhibit I on argument of this motion." That document, too, has not been filed with the court for its perusal.

In the affidavit submitted by Ocean in support of its further motion for summary judgment directed against the impleaded defendants additional information concerning the contents of the charter party is supplied in the form of two brief excerpts, quoted in the following, from the contract. The provisions read: *Article 8(f)*

"Cargo shall be loaded, stowed, trimmed, secured and discharged by the charterer under the Master's supervision." *Article 19(a)*

"The Master, officers and crew, in supervising the loading, stowage, trimming, securing or discharging of cargo shall be deemed the agents of the charterer insofar as such supervision pertains to the seaworthiness of the Vessel."

How far, if at all, provisions of this nature may serve to insulate a shipowner, whose master and crew continue to man a vessel as it loads its cargo, from the absolute and nondelegable duty to maintain the seaworthiness of the vessel (see p. 93 & fn. 10) vis-a-vis those engaged, as libelant appears to have been, in performing the traditional functions of a seaman is a problem best reserved for examination in depth at a full scale trial. Significantly, Ocean's brief on its motion to dismiss, makes no mention of the Army in any context, but bears down heavily upon the obligations shared with Stevedore, or assumed by Stevedore in Ocean's exoneration. These obligations are postulated upon an assumed direct relationship between Ocean as shipowner and Stevedore as an independent contractor whose employees alone were through their negligent activities responsible for libelant's injuries.

4. Stevedore does not concede. It poses as two of the many questions calling for answer at trial "[t]he type of illumination then existing in the #4 lower hold of the S. S. Ocean Evelyn" and "[t]he

the flooring of wood upon which the hi-lo was operating in no way contributed to the accident. No ship's gear was involved in or contributed to Mistretta's injuries."

▆ Summary judgment is a useful tool when the factual basis for its functioning is clear and incontrovertible.[5] It does not lend itself effectively to the

resolution of a claim of negligence when negligence is to be deduced as an inference from an agglomeration of evidence, not even, when, as here the opposing parties announce agreement as to what is established by the evidence and disagree only as to the legal conclusion they would have the court draw as to whether negligence is demonstrated vel non.[6]

size and dimensions of the #4 lower hold area aboard this vessel including therein the type of floor or deck of the area and its adequacy for the purpose in which it was then being used."

5. The admonition of Doehler Metal Furniture Co. v. United States, 149 F.2d 130, 135 (2d Cir. 1945) serves as a reminder that the primary objective of judicial administration is the just disposition of litigation, not its expeditious termination by aborting trials that should be held and entering judgments that are not just and, hence, often not final. The Court wrote in this connection as follows:

"We take this occasion to suggest that trial judges should exercise great care in granting motions for summary judgment. A litigant has a right to a trial where there is the slightest doubt as to the facts, and a denial of that right is reviewable; but refusal to grant a summary judgment is not reviewable. Such a judgment, wisely used, is a praiseworthy time-saving device. But, although prompt despatch of judicial business is a virtue, it is neither the sole nor the primary purpose for which courts have been established. Denial of a trial on disputed facts is worse than delay. Cf. Arenas v. United States, 322 U.S. 419, 429, 433, 64 S.Ct. 1090, 88 L.Ed. 1363. The district courts would do well to note that time has often been lost by reversals of summary judgments improperly entered."

See also for the vigor of its caveat and citation of authority Peckham v. Ronrico Corp., 171 F.2d 653 (1st Cir. 1948), and Reliable Machine Works, Inc. v. Furtex Machine Corp., 11 F.R.D. 525 (S.D.N.Y.1951) in which the then District Judge Kaufman, citing Peckham, declares that "[a] party has the right to a trial where the slightest doubt exists as to the facts in issue."

6. Both federal and New York state courts are in accord that the grant of summary judgment in negligence cases is inadvisable and may result in a denial of justice. The general rule is thus stated in Moore's Fed.Prac., Vol. 6, ¶ 56.17 [42], p. 2232: "[W]e start with the general

proposition that issues of negligence, including such related issues as contributory negligence are ordinarily not susceptible of summary adjudication for or against the claimant, but should be resolved by trial in the ordinary manner." In support of the textual declaration the following are among the cases Professor Moore cites:

Ramsouer v. Midland Valley R. Co., 135 F.2d 101 (8th Cir. 1943); Pierce v. Ford Motor Co., 190 F.2d 910 (4th Cir. 1951), cert. denied 342 U.S. 887, 72 Sup. Ct. 178, 96 L.Ed. 666 (1951); Cellini v. Moss, 98 U.S.App.D.C. 114, 232 F. 2d 371 (D.C.Cir.1956); Aetna Insurance Co. v. Cooper Wells & Co., 234 F.2d 342 (6th Cir. 1956); Roucher v. Traders & Gen. Ins. Co., 235 F.2d 423 (5th Cir. 1956); Furlong v. Stichman, 24 F.R.D. 400 (S.D.N.Y.1959).

Tripp in the 1955–1962 cumulative supplement to his "A Guide to Motion Practice" wrote (p. 198) with respect to the approach of the New York courts to the problem as follows:

"Because in the field of negligence law 'The jury's function in a trial is not only to find as between contradicted facts, which are true, but also to find as between contradictory inferences, which are true,' and 'even the drawing of reasonable inferences is exclusively the province of the fact finders,' (DiSabato v. Soffes, dissenting opinion Breitel, J., 9 A.D.2d 297, 307, 193 N.Y.S.2d 184, 196), negligence actions do not readily lend themselves to a summary disposition (Hajder v. G. & G. Moderns, Inc., 12 A.D.2d 651, 213 N.Y.S. 2d 880.)"

Agreement between the parties as to the facts which leave to the court the drawing of the inference of negligence or its absence does not warrant the court in making such determination as to fault and awarding summary judgment accordingly.

Cf. Empire Electronics Co. v. United States, 311 F.2d 175 (2d Cir. 1962) wherein the court wrote at p. 180 as follows:

" 'The facts and circumstances, although in no material dispute as to their

Where the suit is brought in admiralty the caveat of that court lest a too brisk efficiency in adjudication frustrate justice is even stronger than that which the

actuality, reveal aspects from which inconsistent hypotheses might reasonably be drawn and as to which the minds of reasonable men might differ. The drawing of inferences and the acceptance of hypotheses arising out of the facts are ordinarily attributes that the judicial process has conferred upon the finder of facts.' Winter Park Tel. Co. v. Southern Bell Tel. & Tel. Co., 181 F.2d 341 (5th Cir. 1950). 'The impact of particular circumstances upon an inference arising from an admittedly existing factual situation calls for a factual determination which is the function of the trier of the facts and not that of the court in disposing of a motion for summary judgment * * *. "A judge may not, on a motion for summary judgment, draw fact inferences."' Bragen v. Hudson County News Co., 278 F.2d 615, 618 (3rd Cir. 1960). See Mullaly v. Carlisle Chem. Works, Inc., 184 F.Supp. 701, 707–08 (D.N.J.1960). See also Paul E. Hawkinson Co. v. Dennis, 166 F.2d 61 (5th Cir. 1948); General Accident, Fire & Life Assurance Corporation, Limited v. Goodyear Tire & Rubber Co., 132 F.2d·122 (2d Cir. 1942); 6 Moore, supra, at 2189."

The inferences to be drawn from the underlying facts contained in the materials before the court must be viewed in the light most favorable to the party opposing the motion for summary judgment. United States v. Diebold, Inc., 369 U.S. 654, 82 Sup.Ct. 993, 8 L.Ed.2d 176 (1962).

The fact that matter set out in affidavits submitted by a movant is uncontradicted by the opponent does not compel the award of a summary judgment when credibility of the affiant may be an element better reserved for exploration at trial. Suggestive of the possibility of error when a case is heard and passed upon with only affidavits providing evidentiary grist for the court in reaching its decision is the opinion in Arnstein v. Porter, 154 F.2d 464 (2d Cir. 1946), from which the following is excerpted: (p. 471)

"But where, as here, credibility, including that of the defendant, is crucial, summary judgment becomes improper and a trial indispensable. It will not do, in such a case, to say that, since the plaintiff, in the matter presented by his affidavits, has offered nothing which discredits the honesty of the defendant, the latter's deposition must be accepted as true. We think that Rule 56 was not designed thus to foreclose plaintiff's privilege of examining defendant at a trial, especially as to matters peculiarly within defendant's knowledge. Illustrative of the dangers, in this respect, of summary judgments, if not cautiously employed, is a recent case in the court below. There the judge refused to grant summary judgment for defendants, despite a mass of impressive affidavits, containing copies of corporate records, the accuracy of which plaintiffs did not deny in their affidavits, and which on their face made plaintiffs' case seem nothing but a sham; at the trial, however, cross-examination of the defendants revealed facts, theretofore unknown by plaintiffs, that so riddled the defendants' case as it had previously appeared on the summary judgment motion that the judge entered judgment against them for several million dollars, from which they did not appeal."

Even where the moving party appears to have borne his burden of proof, "the court must necessarily evaluate the character of the record in light of the legal issues; and it should take care not to adjudicate difficult or complicated legal issues * * * upon an inadequate factual basis. A sound appraisal may demand that the motion be denied and that the case proceed to trial." 6 Moore's Fed.Prac. ¶56.15 [6], p. 2159, Kennedy v. Silas Mason Co., 334 U.S. 249, 68 S.Ct. 1031, 92 L.Ed. 1347, (1948); Arenas v. United States, 322 U.S. 419, 434, 64 S.Ct. 1090, 1097. (1944); Nichols v. Cities Service Oil Co., 256 F.2d 521 (4th Cir. 1958). Particularly apposite to the current situation is the comment in the opinion in Demandre v. Liberty Mutual Insurance Co., 264 F.2d 70, 73 (5th Cir. 1959), that "while both parties urged that the case was ripe for summary judgment and on this meager record claimed each was right, the other wrong, the fact remains that such action* was

*The district judge had granted the motion.

too hasty, and the Court ought not to have been induced by this mutual plea." Nor should the court in a negligence action even where the evidence if presented at trial might well warrant the direction of a verdict, grant summary judgment in advance of trial. So the Court of Appeals declared in Pierce v. Ford Motor Co., 190 F.2d 910 (4th Cir. 1951), cert. denied 342 U.S. 887, 72 Sup.Ct. 178, the opinion in this connection (p. 915) reading as follows:

"Even in cases where the judge is of opinion that he will have to direct a ver-

appellate courts issue. Admiralty Rule 58 authorizing summary judgment first came into effect in 1961, long after Fed. R.Civ.P. 56 with which it is in pari materia was enacted. The admiralty summary judgment provision, moreover, impinges upon a trial procedure wherein the traditional rule requires the Judge presiding to hear the evidence through to completion of the trial before essaying to decide the issues. Admiralty favors thorough inquiry and exposition in the ascertainment of facts. At 3 Benedict on Admiralty (6th Edition) § 406, p. 112 the author notes that "A motion to dismiss at the close of libelant's case is ordinarily not entertained unless the claimant also rests." Supporting this view are Bull et al. v. New York & Porto Rico S. S. Co., 167 F. 792 (2d Cir. 1909), cert. denied 214 U.S. 526, 29 Sup.Ct. 704, 53 L.Ed. 1068; The Persiana, 158 F. 912 (S.D.N. Y. 1907); and Martin Marine Transp. v. United States, 66 F.Supp. 673 (D.C.E.D. Pa.1946).

The libelant's claim of unseaworthiness of the vessel, as well as of general want of care in carrying forward the lading operations present questions of liability as affected by less than complete transfer of control from the shipowner to the stevedore. As pertinent precedents are investigated by the court, it encounters warnings of shoal waters ahead. In Robillard v. A. L. Burbank, & Co.,[7] Circuit Judge Friendly, sitting by designation as a District Court Judge, dealt with the subject of unseaworthiness as it touched a longshoreman's cause of action against a shipowner. The latter had contracted with a stevedore employer for his services. In the excerpt quoted from the opinion in the footnote below the opening sentences remark that "[i]t would have been a bold man who would have asserted fifteen years ago that a longshoreman, working on land, might recover from a shipowner on a warranty of seaworthiness for an injury caused by a dangerous condition created on the ship by the active negligence of his own employer. However, binding authority seems to have forged each link in a chain leading to this, to me, still surprising conclusion." [8]

---

dict for one party or the other on the issues that have been raised, he should ordinarily hear the evidence and direct the verdict rather than attempt to try the case in advance on a motion for summary judgment, which was never intended to enable parties to evade jury trials or have the judge weigh evidence in advance of its being presented."

7. 186 F.Supp. 193 (S.D.N.Y.1960).

8. The excerpt continues after the matter set out in the text as follows:
   "The first link, of course, is Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, deciding that a longshoreman injured aboard ship can recover damages for unseaworthiness from a nonnegligent shipowner. Strika v. Netherlands Ministry of Traffic, 2 Cir., 1950, 185 F.2d 555, certiorari denied, 1951, 341 U.S. 904, 71 S.Ct. 614, 95 L.Ed. 1343, held the reasoning of Sieracki and other cases compelled the conclusion that a longshoreman injured ashore could likewise recover for unseaworthiness, in an accident that occurred before enactment of 46 U.S.C.A. § 740, see 64 Harv.L.Rev. 996, 997 (1951), and the Ninth Circuit embraced this view even in a case that did not require it to do so, Pope & Talbot, Inc. v. Cordray, 1958, 258 F.2d 214, 218. Cf. Fredericks v. American Export Lines, Inc., 2 Cir., 1955, 227 F.2d 450, certiorari denied, 1956, 350 U.S. 989, 76 S.Ct. 475, 100 L.Ed. 855, where the injury was caused by the breaking of a skid on the pier. The third link is forged by Alaska SS Co. v. Petterson, 1954, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798, affirming per curiam the Ninth Circuit's decision, 1953, 205 F.2d 478, holding a shipowner liable for unseaworthiness to an employee of a stevedoring company for injury caused by the breaking of a block assumed to have been brought on the vessel by the plaintiff's employer—a decision which, as Judge Clark immediately pointed out in Berti v. Compagnie de Navigation Cyprien Fabre, 2 Cir., 1954, 213 F.2d 397, 400, invalidated many of the Second and Third Circuit decisions on 'relinquishment of control' as applied to unseaworthiness on which defendant here relies. See Tetreault, Seamen, Seaworthiness, and the Rights of Harbor Workers, 39 Corn.L.Q. 381, 411–412 (1954); Gilmore & Black, The Law of Admiralty, pp. 324–328. Alaska SS Co. v. Petterson did involve defective gear although why that should

Further on in the course of the judge's progress report concerning the metamorphoses of judicial attitude in the period he mentions, one comes upon the observation, intimidating to the unduly venturesome, that Alaska Steamship Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, affirming per curiam the Ninth Circuit's decision, 205 F.2d 478, had the effect of "invalidat(ing) many of the Second and Third Circuit decisions on 'relinquishment of control' as applied to unseaworthiness on which defendant here relies."[9] The shipowner's obligations, whatever the ever-expanding dimension current decisional law may assign to them, are generally non-delegable, regardless of the owner's surrender of control of his vessel to another.[10] In Grillea v. United States,[11] Judge Hand, writing for the Court of Appeals remarked that "it is at times hard to say whether a defect in hull or gear that arises as a momentary step or phase in the progress of work on board should be considered as an incident in a continuous course of operation, which will fasten liability upon the owner only in case it is negligent, or as an unfitness of the ship that makes her *pro tanto* unseaworthy."

Citing, as illutrative, Mollica v. Compania Sud-Americana de Vapores [12]

wherein the shipowner was held liable to a longshoreman for the vessel's unseaworthiness—(the hold in which the longshoreman, employee of an independently contracted stevedore, was injured was unsafe as insufficiently lighted)—Judge Hand continues with a comment that "[i]t would be futile to try to draw any line between situations in which the defect is only an incident in a continuous operation, and those in which some intermediate step is to be taken as making the ship unseaworthy." The distinguished jurist, nevertheless, proceeds to make the delineation which he finds necessary for the purposes of the appellate review. What was reviewed, however, was a judgment entered after a *trial* below where evidence with the full panoply of trial procedure present and operative had been adduced and sifted by the court before it made its determination. The award of a judgment on affidavits alone is contraindicated when so distinguished a jurist is constrained to use such expressions in the evaluation of facts and the inferences to be drawn therefrom as "hard to say" and "futile to try to draw any line."

Seas Shipping Co. v. Sieracki, supra, and Pope & Talbot v. Hawn [13] as prelude to Alaska Steamship Co. v. Petterson [14]

make a difference when the gear was not the ship's and the defect was not known to the owner, would be hard to see. In any event the final link seems to have been supplied by Mitchell v. Trawler Racer, Inc., 1960, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941, reversing the First Circuit's decision that with respect to 'an unseaworthy condition which arises only during the progress of the voyage', the shipowner's obligation 'is merely to see that reasonable care is used under the circumstances * * * incident to the correction of the newly arisen defect', 265 F.2d at page 432, and holding that Alaska SS Co. v. Petterson 'effectively disposes of the suggestion that liability for a temporary unseaworthy condition is different from the liability that attaches when the condition is permanent.' 362 U.S. at page 550, 80 S.Ct. at page 933."

9. Judge Clark, as Judge Friendly notes, "immediately pointed out in Berti v. Compagnie de Navigation Cyprien Fabre, 2 Cir., 1954, 213 F.2d 397, 400" such invalidation of Second and Third Circuit precedent.

10. "In this connection is pertinent also the frequently stated rule that the obligation of a shipowner to provide a seaworthy ship is nondelegable. See, e.g., Lord and Sprague, Cases on the Law of Admiralty (1926) 237, note 4; The Rolph, 9 Cir., 299 F. 52, 55; Globe S.S. Co. v. Moss. 6 Cir., 245 F. 54, 55." Seas Shipping Co. v. Sieracki, 328 U.S. 85, at p. 94, fn. 11, 66 S.Ct. 872, 877 (1946).

11. 232 F.2d 919 (2d Cir. 1956).

12. 202 F.2d 25 (2d Cir. 1953), cert. denied 345 U.S. 965, 73 S.Ct. 952, 97 L. Ed. 1384 (1953).

13. 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953).

14. 347 U.S. 396, 74 S.Ct. 601, affirming in memorandum which cited only Seas Shipping Co. and Pope & Talbot, the determination of the Court of Appeals for the Ninth Circuit reported at 205 F.2d 478 (1953).

made difficult enough the judicial task of determining after trial where that line should be placed which Judge Hand found so difficult to fix in Grillea, supra. Puddu v. Royal Netherlands Steamship Co.[15] cited by Ocean in its brief in support of the thesis that "[n]egligent use of seaworthy equipment by longshoremen does not in legal contemplation render the vessel unseaworthy and cast the owner in damages," is not helpful to respondent's position nor encouraging to the court in its search for guiding precedent. The affirmance, originally by a panel, and later, after some uncertainty en banc, was in each instance by a divided court. It rested narrowly on the ground, routinely announced, that the appellant had failed to satisfy the Court of Appeals that "the findings below are clearly erroneous." Such basis for affirmance of a determination by the court below after plenary trial is amply supported by precedent. But it provides no sure foundation for the grant of summary judgment.

Greater illumination is cast by the dissent of Judge Clark in Puddu. Dissenting opinions unless constituted by a reversal on further appeal as the decision of the court ordinarily have no precedential force. Reference is, therefore, made not for its value as authority, but for its usefulness in the disclosure of the divergence of view among the membership of this circuit's bench on the relevant subject of claims of unseaworthiness and of the derivative jural consequences. Confronted with uncertainty up above, one should be the more hesitant to make summary dispositions at a district court level.[16] A final counsel against precipitate pretrial adjudication is to be found in two Third Circuit cases, freshly decided, which may or may not embody the current thinking of the Second. That uncertainty itself urges upon this court that a trial of the issues is the preferable and more prudent procedure. The cases are Thompson v. Calmar Steamship Corp., 331 F.2d 657 and Ferrante v. Swedish American Lines, 3 Cir., 331 F.2d 571, both opinions being filed in April of this year. These cases carry forward almost to this very moment the exposition which Judge Friendly included in his opinion in Robillard v. A. L. Burbank, & Co., supra, and evidence a continuing and burgeoning implementation of the Sieracki philosophy that the owner "is in position, as the worker is not, to distribute the loss in the shipping community which receives the service and should bear its cost."

Supporting citations in the Third Circuit cases referred to are as recent as

15. 303 F.2d 752 (2d Cir. 1962), cert. denied, 371 U.S. 840, 83 S.Ct. 67, 9 L.Ed.2d 75 (1958).

16. Judge Clark's dissent contains the following (p. 754, of 303 F.2d):
"This is another of the several cases before the court at this term putting in issue the question of a vessel's unseaworthiness as a basis for liability to an injured seaman or longshoreman working upon it. The various panels of the court have been in disagreement on this important issue and, in this writer's view, some have shown an unwillingness to accept the Supreme Court's present conception of unseaworthiness. See, as upholding denial of liability, Pinto v. States Marine Corp., 2 Cir., 296 F.2d 1, 8; Hooper v. Terminal S.S. Co., 2 Cir., 296 F.2d 281; Ezekiel v. Volusia S.S. Co., 2 Cir., 297 F.2d 215; and the present case; and as reversing such a holding below, Van Carpals v. S.S. American

Harvester, 2 Cir., Dec. 13, 1961, rehearing denied Jan. 10, 1962, 297 F.2d 9, and Massa v. C. A. Venezuelan Navigacion, 2 Cir., 298 F.2d 239. In order to avoid discrimination and unfairness among litigants because of differing views among panels we should make an attempt to resolve these differences so far as we can by consideration in banc. Indeed, this seems really necessary because in the view of at least a vigorous minority of the Supreme Court that Court should not take this class of cases on review. See, e.g., the dissent in Crumady v. Joachim Hendrik Fisser, 358 U.S. 423, 429, 79 S.Ct. 445, 3 L.Ed.2d 413. Further, the authority of the Crumady precedent cannot be overlooked; there on closely analogous facts the Court reversed the holding below, 3 Cir., 249 F.2d 818, to hold that the vessel had become unseaworthy through the negligence of the stevedoring company and hence liable to the longshoreman for his injuries."

Gutierrez v. Waterman, 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 1082, decided May 13, 1963. When the ultima Thule of liability will be reached and what configuration it will then display, none now can say. In the meantime a trial rather than a summary judgment would appear the more likely avenue to a just result.

Settle order on notice.