KIME, APPELLEE, *v.* AETNA CASUALTY & SURETY CO., APPELLANT.

(Decided November 12, 1940.)

*Mr. A. E. Simmons* and *Mr. Clarence P. Ducey,* for appellee.

*Messrs. McKeehan, Merrick, Arter & Stewart* and *Messrs. Taber & Daniells,* for appellant.

LLOYD, J. On December 18, 1936, Florence Rowell, who had been a patient of the plaintiff, Quintin D. Kime, a duly licensed optometrist practicing as such in Toledo, filed her petition against him in the Court of Common Pleas to recover damages for alleged negligence and want of skill in the treatment of her eyes. In her amended petition filed therein, she alleged that Kime "held himself out to plaintiff and the general public as a general practicing physician and surgeon" and that on January 25, 1936, she went to his office for the purpose of obtaining a replacement of a broken lens in her eyeglasses; that upon examination of her eyes, Kime informed her that her right eye had become irritated and sore due to some foreign substance or dirt located therein, and directed her to return to

his office on January 27, 1936, which she did, he then informing her that the foreign substance in her eye should be removed therefrom; that without her knowledge and consent, he anaesthetized her right eye by placing therein a drug or medicine, the name and nature of which was unknown to her, and "by means of a sharp instrument cut, gouged, scraped and tore the tissues of the eyeball" of her right eye, which thereby becoming highly inflamed and infected, he prescribed medicines to be placed in her eye at regular intervals and also prescribed a diet for her, all of which directions and orders she followed, but that her eyes remained in a highly inflamed and sore condition; that pursuant to his directions she returned to his office on January 31, 1936, when he examined both of her eyes, falsely informing her that her left eye contained dirt and a foreign substance which was causing an irritation thereof, and that thereupon he unskillfully, by means of a sharp surgical instrument, cut, tore, gouged and scraped the tissues of the eyeball of her left eye; that by reason of the operations performed on both her eyes, the tissues thereof were partially destroyed, both of her eyes continuing to be and remaining in a highly inflamed and sore condition; that she thereafter made numerous visits to the office of Kime, when he told her that it would take a long time for the tissues to heal, giving medicines to her and prescribing a diet, all of which she followed as ordered; that the condition of her eyes did not improve but became in such condition that she was unable to read or sew or to see objects below her waistline; that upon her return to Kime's office on February 7, 1936, he told her that, as a result of a deficient condition, "she was going blind and would lose her entire sight of both eyes" and notified and informed her to follow the diet theretofore prescribed; and that the condition of her eyes is due to the negligence and want of skill of Kime in the treatment of her eyes and that she has

been damaged thereby in the sum of $25,000, for which she prays judgment.

By his answer to this amended petition, Kime admitted that "he was engaged in the practice of optometry" in Toledo at all of the times mentioned in the amended petition; that on January 25, 1936, the plaintiff came to his office for the purpose of having her eyes examined to determine whether her broken lenses were the proper lenses for the correction of her vision and that upon her return on January 27, 1936, he discovered and informed her that there was some dirt located in her eyes and with her request and consent removed that in the right eye and that on January 29, 1936, he removed dust particles from her left eye. Denying the other claims of the plaintiff Rowell, he asked that her petition be dismissed.

The trial of this action resulted in a jury verdict on May 6, 1938, for Mrs. Rowell in the sum of $3,000. Prior to the commencement of the action, Kime advised the Toledo attorney of the insurance company of the claim that was being made against him and on August 22, 1936, this attorney notified Kime by letter that the "policy which you carry with The Aetna Casualty and Surety Company is, as you know, an Optometrist Special Liability Policy which covers for errors or mistakes committed by you in the practice of optometry only. In view of the fact that the claim brought against you by Mrs. Florence Rowell is for claimed injury to her eye due to the use of a surgical instrument, the claim is not covered by our policy and the company respectfully denies all liability thereunder."

After the return of the $3,000 verdict, the action was settled on May 21, 1938, by the payment of $2,500 to Mrs. Rowell, Kime thereafter paying, in addition thereto, $600 to his attorneys as compensation for their services. On the same day, a motion by Kime for a new trial was granted and the cause entered "Dis-

missed at plaintiff's costs with prejudice to a new action.'' On July 7, 1939, Kime commenced the action, from the judgment in which the defendant insurance company now appeals to this court on question of law.

In his amended petition filed therein, he alleges the issuance to him by the defendant insurance company of its policy of indemnity insurance to which there is attached an endorsement known as a rider, the part thereof pertinent to the issues involved herein containing the following provisions:

''Does hereby agree to defend and indemnify each assured (including his estate) named in the representations hereof, within the amounts as expressed herein, against loss and/or expense arising or resulting from claims upon the assured for damages on account of any malpractice, error or mistake committed or alleged to have been committed, during the policy period provided herein by an assured personally in the practice of optometry only, save and except claims for damages:

''(1) Where it shall have been legally established that the damage was caused by an assured while under the influence of intoxicants or narcotics or while engaged in or in consequence of the performance of a criminal act.

''(2) Arising by reason of the liability of any assured as proprietor in whole or in part of any store or other business enterprise.

''Forming part of the certificate to which it is attached from its date of issue.''

He further alleges the refusal of the defendant to defend the action brought against him by Mrs. Rowell, and that as a consequence thereof he was compelled to employ attorneys and to pay to them $600 for their services and to pay $2,500 to Mrs. Rowell in settlement of her claim. Denying that he had done any of the things alleged by Mrs. Rowell in her petition filed in her action brought against him, he prays for a judgment against the defendant insurance company in the

sum of $3,175. The answer of the insurance company in effect is that as an optometrist he was not authorized or permitted to treat Mrs. Rowell's eyes, as by the attempted removal of the foreign substance therein he undertook to do, and that since the policy of insurance indemnified him only against claims arising from the practice of "optometry only," there exists no liability against it in the instant case.

The problem for solution, therefore, is whether Kime did what Mrs. Rowell alleges he did and, if so, whether his acts were within the terms and conditions of the policy of insurance under which he claims reimbursement for his alleged loss.

In appellant's brief are listed twelve errors assigned as prejudicial, some of which are well taken and some not. Among them are that there should have been a directed verdict in its favor, which not having been done, its motion for judgment notwithstanding the verdict should have been granted.

It is also claimed that the trial judge erred in his charge to the jury . In view of the conclusion reached, consideration need be given only to the refusal to direct a verdict and to the overruling of appellant's motion for judgment notwithstanding the verdict, either of which, if allowed, would attain the same result.

The charge, had the trial called for submission of the issues to the jury, was manifestly deficient; mention of which is made only that it may be remedied in any similar case that may arise.

The policy of insurance was issued to a "group of members of the Ohio State Optometric Association," of which Kime was one, and had thereon the above-quoted endorsement restated in the certificate issued to Kime, evidencing the coverage by it of any claims made against Kime as one of the insured group and for which he paid a premium of $5.

The policy provided that the defendant would "defend and indemnify each assured (up to $5,000 for one

claim) against actual loss and/or expense arising or resulting from claims upon him for damages on account of any malpractice, error or mistake committed or alleged to have been committed * * * in the practice of his profession.''

Section 1295-21, General Code, provides:

''The practice of optometry is defined to be the application of optical principles, through technical methods and devices in the examination of human eyes for the purpose of ascertaining departures from the normal, measuring their functional powers and adapting optical accessories for the aid thereof.''

If what Kime did in his examination and treatment of Mrs. Rowell's eyes is included in the statutory definition of optometry, then the defendant was bound to defend the claim made against him by Mrs. Rowell—otherwise not.

It is too clear to require overmuch discussion that Kime was not permitted, within the provision of Section 1295-21, General Code, to do that which Mrs. Rowell alleges in her petition he did, and what she alleges therein, so far as the instant case is concerned, must be accepted as true, because Kime acquiesced in the verdict of the jury by settling the litigated claim of Mrs. Rowell, the granting of a new trial being merely perfunctory and coincidental therewith, the undisputed fact being that he did remove some substance from the eyes of Mrs. Rowell by some objective means, which, as an optometrist, he was not privileged to do. By whatever term what he thus did may be designated, whether simple or complex, it was in principle the same and not included within the statutory definition of optometry. The very word ''optometrist''—''opto-'' meaning of or relating to the eyes or vision, and ''meter,'' a unit of measure—would seem to indicate what the business of an optometrist is, even

though it were not so definitively provided by statute. Counsel for Kime contended that "the word 'malpractice' is not synonymous with 'error' or 'mistake' and that the company did not intend to limit the policy coverage to acts of malpractice only, otherwise they would not have added the words 'error' or 'mistake.' "

How such contention can be made in the face of the certificate endorsement that the policy insures "against loss and/or expense arising or resulting from claims upon the assured for damages on account of any malpractice, error or mistake committed * * * by an assured * * * in the practice of optometry" is so incomprehensible as not to call for further comment. Surely the contemplated "error" or "mistake" must be within the context of the policy. As heretofore stated, the trial of her pleaded cause of action against Kime resulted in a verdict in favor of Mrs. Rowell for $3,000, in which Kime acquiesced by the payment to her of $2,500, and the court costs. Thereby he admitted the facts pleaded in her amended petition as the basis of her cause of action, and he can not now deny the issuable facts therein alleged, especially since it is clear from the evidence in the instant case that what he did in removing from her eyes the foreign substance was outside of and not included in the practice of optometry as defined by the statute.

Had Kime successfully contested the claim of Mrs. Rowell, a far different question would be presented, but on the record, not only of the verdict in her favor but on the admitted facts, Kime has no claim against the appellant insurance company; and the trial court should either have granted the motion for a directed verdict or the motion for a judgment notwithstanding the verdict. In failing to do so it committed prejudicial error which requires a reversal of the judgment and

284

the entry of a final judgment in favor of the appellant company, which accordingly is done.

*Judgment reversed and final judgment for appellant.*

CARPENTER and OVERMYER, JJ., concur.