Mrs. May Sketchler DEMANDRE, wife of, and Celestin Demandre, Appellants,

v.

LIBERTY MUTUAL INSURANCE COMPANY, Appellee.

No. 17420.

United States Court of Appeals
Fifth Circuit.

Feb. 27, 1959.

---

8. Washburn Patent No. 995,993.

9. See also Stabler v. Bright Leaf Industries, Inc., 5 Cir., 261 F.2d 383.

John V. Baus, New Orleans, La., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., of counsel, for appellee.

Before HUTCHESON, Chief Judge, and BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This was a suit for damages instituted by Mrs. Demandre against the Insurer under the Louisiana Direct Action Statute. LSA–R.S., Tit. 22, § 655. The Insurer had issued a Comprehensive General Liability policy to Touro Infirmary, one of New Orleans largest hospitals. The claim was that the hospital had negligently failed to place sideboards on her hospital bed with the result that while under extensive sedation she had fallen out of the bed.

As the policy undertook to "pay on behalf of [Touro Infirmary] all sums which [it] shall become legally obligated to pay as damages because of bodily injury, sickness or disease * * * sustained by any person and caused by accident," the problem normally, as in an ordinary suit, would be judged in terms of the basic liability of the hospital. That would involve the question, on usual tort principles, whether the act was negligent, and if so, was a proximate cause of the harm. But there is an added complication here which made this something more than a simple derivative suit.

That stems from the fact that the policy, as one of its principal terms, contains the so-called malpractice endorsement, excluding liability from malpractice or errors in rendering or failing to render medical or other professional service or treatment.[1]

It was on the basis of this exclusion in the policy and the nature of the allegations of fault in the plaintiff's com-

Sidney W. Provensal, Jr., New Orleans, La., for appellants.

---

1. The endorsement reads:
   "Exclusion of Malpractice and Professional Services
   "It is agreed that the policy does not apply to bodily injury, sickness, disease or death resulting from any malpractice, error or mistake in rendering or failing to render medical, surgical, dental, x-ray, nursing, cosmetic, tonsorial or other professional or sanatory service or treatment or in preparing, compounding, dispensing, selling or delivering merchandise used for or intended for use for such service or treatment."

plaint that the Insurer moved for and obtained summary judgment. The contention successfully pressed below was that the acts of the agents of the hospital, as such acts were described in the complaint, were necessarily those of a professional nature related essentially to the medical care and treatment of Mrs. Demandre.

Our difficulty is not so much with the interpretation of this policy exclusion. Necessarily it uses broad and general terms. But none pose problems exceeding the usual task of judicial interpretation. Our difficulty stems from the procedural manner in which the issue was attempted to be resolved below.

■ Except for bringing into the case the exclusionary endorsement of the policy, note 1, supra, the Insurer's motion for summary judgment was really nothing but a motion for judgment on the pleadings. It is true that F.R.Civ.P. 56, 28 U.S.C.A., (and see 12(c)) permits this, but the course is tortuous and frequently leads to reversal because it undertakes to determine legal questions on the basis of facts as they are broadly asserted to be rather than what they are or may be found to be. See, e.g., Dyal v. Union Bag-Camp Paper Corp., 5 Cir., 1958, 263 F.2d 387, and Hiern v. St. Paul-Mercury Indemnity Co., 5 Cir., 1958, 262 F.2d 526. Any such process is exposed to the perils of an outright motion under F.R.Civ.P. 12(b) that the complaint fails to set forth facts entitling the party to relief. We have many times pointed out the pitfalls in this

maneuver. Millet v. Godchaux Sugars, Inc., 5 Cir., 1957, 241 F.2d 264; Carss v. Outboard Marine Corp., 5 Cir., 1958, 252 F.2d 690. The pitfalls arise because of the nature of the underlying test which we have many times stated and which has been recently restated in the broadest terms. "In appraising the sufficiency of a complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 1957, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed. 2d 80.

■ Consequently whether the "facts" stated in the complaint present a "genuine issue as to any material fact" as F.R.Civ.P. 56 requires is really to be measured by whether no evidence could be offered to support the plaintiff's theory. By the very nature of this complaint, stated as it is in the broad language permitted by the rules, far from showing the *absence* of controversy, it reflects on its face that many questions of fact are open and still undisclosed.[2]

This is evident when we consider briefly some of the very few decisions construing this or somewhat similar exclusions. On one side is Maryland Casualty Co. v. Crazy Water Co., Tex.Civ. App.1942, 160 S.W.2d 102, no writ history. There a "tubber"—one who assisted guests of the hotel in taking baths in the famed mineral waters of the establishment—was held not to be engaged in

2. Concerning this phase of the case, the complaint stated:

"II.

"On January 5, 1956 [Mrs. Demandre] was transported by ambulance * * * to Touro Infirmary and became a paying patient of the said Touro Infirmary * * *.

"III.

"[Mrs. Demandre] had received sedatives from her private physician and was extremely restless, and the employees of said Touro Infirmary were requested to place barriers or sides on her bed, the purpose of which was to prevent her from rolling or falling out of said bed.

"IV.

"That in spite of the request and [Mrs. Demandre's] obvious condition, the said Touro Infirmary failed and neglected to place barriers or sides on her bed or take other precautions, and [she] was left unattended and on or about 4:30 P.M. on January 5, 1956 [she] fell out of bed and received injuries as hereinafter set forth.

"V.

"That Touro Infirmary, through its employees, knew or should have known of [her] condition, and knew or should have known that steps were necessary to prevent her falling out of her bed."

professional services when the tubber's negligence resulted in injury to one of the guests taking a bath prescribed by her doctor. On the other, is Harris v. Fireman's Fund Indemnity Co., 1953, 42 Wash.2d 655, 257 P.2d 221, in which injuries sustained by a patient then undergoing osteopathic treatment when the special treatment table collapsed were held to have arisen out of the rendition of professional services. Similarly, in American Policyholders' Insurance Company v. Michota, 1952, 156 Ohio St. 578, 103 N.E.2d 817, an injury resulting from an unsafe chiropodist's hydraulic chair then being used for treatments was excluded from policy liability. In Liberty Nursing Home, Inc. v. New Amsterdam Casualty Co., 1942, 265 App.Div. 883, 38 N.Y.S.2d 275, appeal denied 265 App. Div. 954, 39 N.Y.S.2d 606, policy coverage was denied under the exclusion for failure of the hospital adequately to protect a mentally deranged patient from self-destruction. On the underlying question of the professional nature of the act of failing to protect a patient from falling out of bed, Lee v. Glens Falls Hospital, 1943, 265 App.Div. 607, 42 N.Y. S.2d 169, affirmed 291 N.Y. 526, 50 N.E. 2d 651, held that these acts were performance of professional services, although no insurance policy was involved. Probably somewhere in between in Norways Sanatorium, Inc. v. Hartford Accident & Indemnity Co., 1942, 112 Ind.App. 241, 41 N.E.2d 823, 44 N.E.2d 192, which involved an exclusion clause somewhat different from that presented here. This case involved the failure to prevent a patient from jumping out a second story window, and the Court held it was not within the professional services exclusion. This was on the ground that while a professional person might have watched him, this could have been equally well done by anyone else, and the accident could have been prevented by the simple administrative expedient of putting him in a room on the ground floor.

Under the broad allegations of the complaint, note 2, supra, that despite a request and necessity for sideboards the hospital agents "failed and neglected" to supply them, the proof might take many different turns. For example, the evidence offered might permit the inference that the patient (or one on her behalf) requested that the boards be placed and the floor physician or nurse having responsibility for her care agreed that this would be done and then issued an instruction that it be carried out, but thereafter an orderly or a janitor failed to carry out that instruction. On the other hand, the evidence offered might permit the inference that a request was made of the floor nurse who, without an express assent, subsequently determined that sideboards were not needed or would be detrimental. Or, after such request, the nurse determined that sideboards were desirable but simply forgot to install them or issue appropriate instructions to have it done. Or the evidence might portray almost infinite variations of these possibilities. Emerging from such inferences would be many factors requiring careful evaluation. Amongst many others might be included the significance, or non-significance of the professional or non-professional status of the tortious actor. Or it might be the significance or non-significance of the principal function or purpose of the facility or appliance used, furnished or requested.

We think it unwise for us to indicate any precise limits of coverage or non-coverage under this exclusion, and our comments are not meant as a forecast of the proper decision as the facts on the proceedings on remand come close to any of these suggested hypotheses. At the present time such expressions can deal only with academic possibilities. The policy should be construed against actualities.

Until the facts are determined by a trial, or until on all of the *facts*, not mere pleadings, the Court concludes that there is no genuine issue of fact for a trial, Carss v. Outboard Marine Corp., 5 Cir., 1958, 252 F.2d 690, 693, the Court cannot apply broad principles to determine coverage. Consequently, while both par-

ties urged that the case was ripe for summary judgment and on this meager record claimed each was right, the other wrong, the fact remains that such action was too hasty, and the Court ought not to have been induced by this mutual plea. The case must, therefore, be reversed and remanded for further consistent proceedings.

Reversed and remanded.