[No. 35511. Department Two. June 22, 1961.]

HENRY A. SHERWOOD et al., Appellants, v. MOXEE SCHOOL DISTRICT No. 90, Respondent.*

*Reported in 363 P. (2d) 138.

*Tonkoff, Holst & Hopp,* for appellants.

*Halverson, Applegate & McDonald,* and *Walter E. Weeks, Jr.,* for respondent.

FOSTER, J.—Appellants, plaintiffs in the superior court, appeal from a judgment dismissing their complaint pursuant to motion against the complaint alone without additional factual showing as authorized by Rules of Pleading, Practice and Procedure 12 (b) and 56, RCW Vol. 0. In other words, the motion to dismiss for failure to state a claim upon which relief may be granted was substituted for the general demurrer of the former practice.

Appellants sued for the death of their son who was a pupil in the Moxee High School. The complaint alleged that the tragedy occurred on a school day while the boy was in the school's care during an initiation ceremony of a high school lettermen's society. It is alleged that the ceremony was under the auspices of the school district whose agents were present and in charge of the meeting. There are several specifications of negligence.

No longer is it necessary for a plaintiff to plead the facts "constituting a cause of action." Indeed, the phrase "cause of action" no longer appears anywhere in the rules of civil procedure. The word "claim" alone is used. *Nagler v. Admiral Corp.,* 248 F. (2d) 319; *Dioguardi v. Durning,* 139 F. (2d) 774; *Original Ballet Russe, Ltd. v. Ballet Theatre, Inc.,* 133 F. (2d) 187.

The present requirement is:

" . . . (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled. . . ."[1] Rule of Pleading, Practice and Procedure 8 (a) (1), RCW Vol. 0.

---

[1]"A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall con-

Rule of Pleading, Practice and Procedure 7 (c), RCW Vol. 0,[2] abolishes demurrers. This means that demurrers are abolished, not masqueraded under another name,[3] and that there is no necessity for stating the facts constituting a "cause of action;" but that, on the contrary, a complaint is sufficient if it contains a short and plain statement of the claim showing that the pleader is entitled to relief and a demand therefor.

In *Conley v. Gibson*, 355 U. S. 41, 45, 2 L. Ed. (2d) 80, 78 S. Ct. 99, the United States Supreme Court, in simple and unmistakable terms, stated the test to be applied in passing upon this motion as follows:

" . . . In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. . . ."

See, also: *Knudsen v. Torrington Co.*, 254 F. (2d) 283; *Fair v. United States*, 234 F. (2d) 288; *Des Isles v. Evans*, 200 F. (2d) 614; *Callaway v. Hamilton Nat. Bank of Washington*, 195 F. (2d) 556; *American Federation of Labor v. Western Union Tel. Co.*, 179 F. (2d) 535; *Mullen v. Fitz Simons & Connell Dredge & Dock Co.*, 172 F. (2d) 601, *certiorari denied* 337 U. S. 959, 93 L. Ed. 1758, 69 S. Ct. 1534;

---

tain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded." Rule of Pleading, Practice and Procedure 8 (a), RCW Vol. 0.

[2]"Demurrers, pleas and exceptions for insufficiency of a pleading shall not be used." Rule of Pleading, Practice and Procedure 7 (c), RCW Vol. 0.

[3]"Rule 7(c), abolishing demurrers and exceptions for insufficiency of pleadings, created, when it was new, much active and positive diversity of opinion. The rule is clear enough, demurrers are not to be entertained in either original or removed actions, but it took some years to persuade the bar that the rule meant what it said and that the demurrer will not be allowed 'either in its own name or under a disarming alias.' " 1A Barron & Holtzoff, Federal Practice and Procedure (Rules ed.), 22, chapter 7, § 246.

*Woods v. Hillcrest Terrace Corp.,* 170 F. (2d) 980; *United States v. Arkansas Power & Light Co.,* 165 F. (2d) 354; *Fuerst v. Noell,* 156 F. (2d) 257; *Fitz Simons & Connell Dredge & Dock Co. v. Savela,* 337 U. S. 959, 93 L. Ed. 1758, 69 S. Ct. 1534.

In respondent's brief, for the first time, factual representations are made from which it argues that the activity in question was *ultra vires.* Such matters were not brought in to the record by affidavit or deposition of persons with testimonial knowledge as provided by Rules of Pleading, Practice and Procedure 12 (b) and 56, RCW Vol. 0, or by any of the many devices provided for that purpose, and cannot be considered.[4]

 By act of the territorial legislature of 1869 (Laws of 1869, chapter 54, p. 154 (RCW 4.08.110)), school districts are vicariously liable for negligence. The text is:

"An action at law may be maintained by any county, incorporated town, school district or other public corporation of like character, in its corporate name, and upon a cause of action accruing to it, in its corporate character and not otherwise, in any of the following cases:

"(1) Upon a contract made with such public corporation;

"(2) Upon a liability prescribed by law in favor of such public corporation;

"(3) To recover a penalty or forfeiture given to such public corporation;

"(4) To recover damages for an injury to the corporate rights or property of such public corporation." RCW 4.08-.110.

"An action may be maintained against a county or other of the public corporations mentioned or described in RCW 4.08.110, either upon a contract made by such county, or

---

[4] "In some instances the merits may be reached and the matter fully disposed of by motion to dismiss for failure to state a claim upon which relief can be granted. F. R. Civ. P. 12. But reversal of such a dismissal still leaves open the possibility that factual data can be presented under motion for summary judgment to show that under no provable set of facts is the claim or defense good. See *Carss v. Outboard Marine Corp.,* 5 Cir., 1958, 252 F. 2d 690; *Millet v. Godchaux Sugars, Inc.,* 5 Cir., 1957, 241 F. 2d 264; *Demandre v. Liberty Mutual Ins. Co.,* 5 Cir., 1959, 264 F. 2d 70 . . ." *Robbins v. Milner Enterprises, Inc.,* 278 F. (2d) 492, 497, note 5.

other public corporation in its corporate character and within the scope of its authority, or for an injury to the rights of the plaintiff arising from some act or omission of such county or other public corporation." RCW 4.08.120.[5]

Under this statute, counties were held vicariously liable for negligence in *Kirtley v. Spokane County,* 20 Wash. 111, 54 Pac. 936 (1898). Judge Reavis, who wrote the court's opinion, commented:

" . . . The state of Oregon from an early date had a statute identical in its terms with that in force in this state, and, while such statute existed in that state, it was held to confer a right of action against the county for neglect in allowing bridges to be out of repair. *McCalla v. Multnomah County,* 3 Ore. 424; and again affirmed in *Sheridan v. City of Salem,* 14 Ore. 328 (12 Pac. 925). . . . Our statute appears to have been taken from Oregon after it had been construed by the courts of that state."

*Redfield v. School Dist. No. 3,* 48 Wash. 85, 92 Pac. 770 (1907), was the first Washington case in which a school district was held vicariously liable for negligence. Eight years later (1915), the same rule was applied in an action arising out of the maintenance of exercise ladders. *Howard v. Tacoma School Dist. No. 10,* 88 Wash. 167, 152 Pac. 1004.

At the ensuing session of the legislature (1917), a bill to immunize school districts for negligence passed the Senate, but a compromise instead was enacted which exempted school districts for negligence connected only with athletic apparatus or manual training equipment. It is now codified as RCW 28.58.030.[6]

---

[5]This statute was copied from Oregon. There, contrary to the prevailing American doctrine of sovereign immunity, it had been construed to impose vicarious liability for negligence on municipal corporations. *McCalla v. Multnomah County,* 3 Ore. 424. In 1889, the Oregon legislature abrogated such liability and restricted responsibility to contract obligations exclusively. *Grant County v. Lake County,* 17 Ore. 453, 21 Pac. 447.

[6]"No action shall be brought or maintained against any school district or its officers for any noncontractual act or omission of the district, its agents, officers, or employees, relating to any park, playground, or field house, athletic apparatus or appliance, or manual training equipment, whether situated in or about any schoolhouse or

With the greatest frequency, it is erroneously stated by American judges, text writers and commentators that, by the common law of England,[7] school districts were not liable for negligence because of sovereign immunity, notwithstanding the fact that there were no free public schools in England before 1870,[8] and there, schools have always been vicariously liable for negligence. 13 Halsbury's Laws of England (3rd ed.) 623, § 1295.[9]

---

elsewhere, owned, operated, or maintained by the school district." RCW 28.58.030.

For more detailed history, see *Stovall v. Toppenish School Dist. No. 49,* 110 Wash. 97, 188 Pac. 12, 9 A. L. R. 908, and *Snowden v. Kittitas County School Dist. No. 401,* 38 Wn. (2d) 691, 231 P. (2d) 621, and particularly Judge Finley's dissenting opinion beginning on page 699.

[7]"At the outset an anomaly in our tort law must be noted. By far the greatest deterrent to litigation involving the school district or board of education has been the medieval refuge *rex non potest peccare,* which, although denied application to schools throughout the motherland of our law [*Weston v. London County Council,* (1941) 1 K. B. 608], has been freely applied in most of the states. That this is done by some democratic paraphrasing or rephrasing of the expression that 'the king can do no wrong' does not eliminate the anomaly which arises from the fact that although the king has long since lost this and most other prerogatives in the country from which the doctrine is borrowed, his successors 'the sovereign people' still enjoy it here. Another way of rationalizing the rule of governmental immunity at the school district level is that since a state cannot, under the federal constitution, be sued without its consent, school districts, being agencies of the state, enjoy the immunities which the state at large enjoys. . . . " Henson, Schools and Teachers—Tort Liability in Our Changing Society, 8 Kan. L. Rev. 124.

[8]Monroe, History of Education, 706, 733, chapter 13; Mulhern, A History of Education, 524, 551, chapter 13; Good, A History of Western Education, 344, 353, chapter 15; Parker, The History of Modern Elementary Education, 226, chapter 11; 2 Cyclopedia of Education 459, 460 (Edited by Paul Monroe).

[9]". . . The duty is to take such care of the pupils as a careful father would take of his children, and the ordinary principles of vicarious liability apply where the carelessness is that of a teacher." 13 Halsbury's Laws of England (3rd ed.) 623, § 1295.

Respecting the common law, in a discussion entitled "Tort Liability of Public Schools and Institutions of Higher Learning," by D. A. Norris, 160 A. L. R. 7, 84, it is stated that "such authorities have been treated as liable in tort to the same extent as private persons or corporations, although no mention was made therein as to the doctrine of immunity."

The prevailing rule in the United States is that school districts, because of sovereign immunity, are not liable for the negligence of their servants, agents or employees. Only in three states, Washington, California and New York,[10] has that immunity been abrogated by statute and vicarious liability substituted. The purpose of such statutes is to make the school district liable upon precisely the same basis as an individual or corporation is responsible.[11] Such

That author has collected in note 14 some of the English and Canadian cases.

The first English case is *King v. Ford*, 1 Stark. 422 (N. P.), 171 English Reprint 517 (1816), in which it was held that a schoolmaster who permits an infant pupil under his care to make use of fireworks is responsible in an action for the mischief which ensues.

For a complete discussion of sovereign immunity in England, see Laski, Responsibility of the State in England, 32 Harv. L. Rev. 447 (1919).

By act of Congress, the United States is liable for negligence the same as an individual. Tort Claims Act, August 2, 1946, 60 Stat. 812, 842; Title 28 U. S. C. A., § 2674.

As the United States did by the Tort Claims Act in 1946, England likewise completely abolished the government's immunity by the Crown Proceedings Act of 1947, 10 & 11 Geo. 6, chapter 44, so that the British government and all of its agencies are now liable for negligence the same as an individual.

[10]"The courts are in general agreement that a school district is not liable in tort, in the absence of statute making it liable. This means that a school district is not liable for injuries resulting from the negligence of its officers, agents, and employees. This doctrine of immunity grows out of the fact that the district, as an arm of the state, has been granted the immunity from liability which the state, as the sovereign, possesses. Only a few states—notably California [26 West's Cal. Code 223, § 903], New York [New York Education Law, §§ 2560, 3023], and, under some conditions, Washington—have statutes making school districts liable." Garber, 1960 Yearbook of School Law, 57, chapter 4.

"In California, New York, and Washington where the common-law rule has been abrogated by statute or decision there is a good chance the injured student can recover against the school district if the negligence is clear. . . ." Henson, Schools and Teachers—Tort Liability in Our Changing Society, 8 Kan. L. Rev. 124, 129.

[11]"The trend against the immunity of municipalities for the negligence of their employees has continued until 'the now declared public policy of the State is that persons damaged by the torts of those acting as its officers and employees need not contribute their losses to the purposes of government.' . . .

". . . In reversing a judgment of non-suit in favor of the teacher and the Board of Education, the First Department said: 'De-

is the law of this state[12] except as to injuries from athletic apparatus and manual training equipment.[13]

*Morris v. Union High School Dist. A,* 160 Wash. 121, 294 Pac. 998, decided that a school district was liable for the negligence of the football coach for an injury sustained by a pupil participating in a school football contest. See, also, *Briscoe v. School Dist. No. 123,* 32 Wn. (2d) 353, 201 P. (2d) 697.

The universal custom of high schools awarding the school's monogram to members of its athletic teams is a matter of common knowledge, of which courts may take judicial notice. The immunity of school districts for negligence accounts for the absence of reported decisions respecting similar accidents. Although the school district was immune, the supreme court of South Dakota affirmed a judgment (*DeGooyer v. Harkness,* 70 S. D. 26, 13 N. W. (2d) 815 (1944)), against a high school football coach for the death of a student player in the initiation ceremonies of a high school lettermen's club. The coach, Gardner, was present during the ceremony and tested the device used in the initiation rite. With respect to the liability of the coach, the court's conclusion was:

"We consider first the liability of the defendant Gardner. The facts disclose that Mr. Gardner actively participated

cisions holding that the principle of *respondeat superior* may not apply against the board of education where the fault complained of was essentially that of a teacher are no longer controlling in view of the provisions of section 881-a of the Education Law * * * .' " *Reeder v. Board of Education of New York,* 265 App. Div. 158, 160, 161, 38 N. Y. S. (2d) 55.

"In considering the question here presented we should keep before us three acts of the legislature, each of which waives the immunity of a public agency against suit for damages when such agency is acting in its governmental capacity and is exercising a governmental function. . . . " *Bates v. Escondido Union High School Dist.,* 133 Cal. App. 725, 728, 24 P. (2d) 884.

[12]RCW 4.08.120; *Redfield v. School Dist. No. 3,* 48 Wash. 85, 92 Pac. 770; *Howard v. Tacoma School Dist. No. 10,* 88 Wash. 167, 152 Pac. 1004.

[13]"Some states have considered it better policy to spread the loss of the individual over the taxing district and this has been done in Washington. Rem. Comp. Stat. 950, 951; and California, St. 1923 p. 675 No. 2. . . . " 6 Wash. L. Rev. 138, 139.

in the initiation activities, that it was he who tested the electrical appliance, and that he played an active role in this whole proceeding of administering the electric shock. We are of the opinion, therefore, that so far as his liability is concerned it is immaterial whether he was acting in a personal capacity or in his capacity as athletic coach or teacher."

 We do not know the facts, and the purpose of the rules of civil procedure is to obtain a decision on the merits as opposed to a mere pleading motion.[14] Nor is it necessary for this purpose to incur the expense and delay of a full-dress trial. On a motion to dismiss, appropriate devices are afforded by Rules of Pleading, Practice and Procedure 12 (b) and 56, RCW Vol. 0, to present all the facts.[15] By statute, the liability of the school district for negligence is the same as the liability of any person or corporation except that a school district has absolute immunity for accidents resulting from "any athletic apparatus or appliance or

---

[14] ". . . ' " * * * that a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim. * * * Under the Rules of Civil Procedure a case consists not in the pleadings, but the evidence, for which the pleadings furnish the basis. Cases are generally to be tried on the proofs rather than the pleadings." ' This makes it necessary that the salient portions of the petition be set out." *Bowdoin v. Malone,* 284 F. (2d) 95, 97.

[15] "The motion to dismiss for failure to state a claim on which relief can be granted is viewed with disfavor in federal courts because of the possible waste of time in case of reversal of a dismissal of the action, and because the primary objective of the law is to obtain a determination of the merits of the claim. All that is required in the complaint is a generalized statement of facts from which the defendant may form a responsive pleading; thus if a bona fide complaint is filed that charges every element necessary to recover, summary dismissal for failure to set out evidential facts is not justified. Even though the court may believe that the plaintiff will ultimately be unable to prove the allegations of his complaint, the complaint should not be dismissed so long as there is any possibility that the plaintiff will ultimately prevail. Denial of the motion does not necessarily require a complete trial in view of the provision for summary judgment enabling the court to dispose of the case, if there is no genuine issue, on the basis of facts rather than on a mere pleading motion." 1A Barron and Holtzoff, Federal Practice and Procedure (Rules ed.), 354 360, chapter 7, § 356.

manual training equipment." This action is not within the exception. The instant complaint alleged that the initiation in question was under the auspices and supervision of the school district's agents, servants and employees and that the tragedy was the result of their negligence. Certainly, under the tests of *Conley v. Gibson, supra,* it does not appear beyond doubt that the appellants would be unable to prove any set of facts which would entitle them to relief. The judgment of dismissal must, therefore, be reversed.

FINLEY, C. J., WEAVER, and ROSELLINI, JJ., concur.

HILL, J. (concurring specially)—I concur in the result. I see here, however, only a very narrow issue. The statute, which makes a school district subject to actions of this character (RCW 4.08.120), specifies that it is liable for an injury to the rights of a plaintiff arising from acts or omissions of the school district that are within the scope of its authority. *Coates v. Tacoma School Dist. No. 10* (1960), 55 Wn. (2d) 392, 347 P. (2d) 1093; *Juntila v. Everett School Dist. No. 24* (1934), 178 Wash. 637, 35 P. (2d) 78.

The trial court was apparently convinced that under the requirements for such an action (laid down in *Coates v. Tacoma School Dist. No. 10, supra*), the amended complaint failed to state a cause of action; however, under our new rules of civil procedure we are no longer concerned with whether a cause of action is stated. Unless we can say, as a matter of law, that no evidence, which the plaintiff could produce, would bring the acts or omissions of the school district (relied upon by the plaintiff) within the scope of its authority, the action should not have been dismissed.

The attempt of the respondent school district to limit the scope of its authority to matters within the curricular activities, and happenings on the school premises is not realistic. That schools do employ athletic coaches, band directors, even debate coaches, and do exercise supervision and control over numerous extra-curricular activities is common knowledge. The justification is their educational and cultural value. Although, to some, a "horse play" ini-

tiation into a letterman's club in a public park after school hours might seem to bear the same relation to education that a bull fight does to agriculture, nonetheless if, as alleged, this initiation was under the auspices of the school district's agents, servants and employees and was planned by them, it may be that the plaintiff can surmount the hurdle of *ultra vires*. Experts may be able to ascertain educational and cultural values in this project that escape the lay mind.

> "New occasions teach new duties;
> Time makes ancient good uncouth;
> They must upward still, and onward,
> Who would keep abreast of truth."[16]

On that possibility, I would set aside the dismissal and give the plaintiff an opportunity to present his evidence.

September 5, 1961. Petition for rehearing denied.

---

[16]"The Present Crisis," James Russell Lowell.