[Civ. No. 27135. Second Dist., Div. One. Oct. 22, 1963.]

ALFRED R. ANTLES, Plaintiff and Appellant, v. THE AETNA CASUALTY AND SURETY COMPANY, Defendant and Respondent.

Von Herzen & Hutton and Walter P. Gribben for Plaintiff and Appellant.

Gibson, Dunn & Crutcher and G. Edward Fitzgerald for Defendant and Respondent.

WOOD, P. J.—The record herein consists of an agreed statement on appeal. There is no clerk's transcript or reporter's transcript. The pleadings are not before this court.

Plaintiff, a chiropractor, had obtained from the defendant insurance company a policy of liability insurance which would indemnify him for any judgments rendered against him for such an injury as that involved herein, unless such liability was excluded by an endorsement thereon entitled "Exclusion of Malpractice and Professional Services."

While such insurance was in effect, James A. Baird, who had been injured as hereinafter described, while he was in Dr. Antles' office, obtained judgment in a municipal court

action against Dr. Antles (plaintiff herein) for $750 damages and $350 as attorney's fees and costs. The insurance company had refused to defend Dr. Antles in that action.

In the present action (in the superior court) plaintiff Dr. Antles sought to recover from the defendant insurance company, under the provisions of said policy, the amounts awarded against him in the municipal court judgment. (The record does not show what relief was sought as to the defendant James A. Baird herein.) In a nonjury trial herein, the court concluded that the insurance company "provided no coverage under its policy of insurance to Alfred R. Antles for the incident involving James A. Baird inasmuch as the incident came within the malpractice or professional service exclusion in the policy." The judgment herein provided that defendant insurance company was not obligated under the terms of the policy to defend Dr. Antles in the municipal court action, or to pay any judgment obtained against him therein. Plaintiff Dr. Antles appeals from the judgment. (No point is made on appeal with reference to any asserted error in the judgment insofar as it affects respondent Baird; and, as above shown, there is no appearance on his behalf.)

 Appellant contends that, under the evidence herein as to the manner in which the injury occurred, the court erred in determining that there was no insurance coverage for the incident involving Mr. Baird.

The endorsement attached to the policy recited in part, as follows:

"ENDORSEMENT
*EXCLUSION OF MALPRACTICE AND
PROFESSIONAL SERVICES*
"It is agreed that, as respects any classification stated below, the policy does not apply to injury, sickness, disease, death or destruction due to the rendering of or failure to render any professional service.
"Classification of Operations:

. . .

. . .
"Chiropractors Offices

. . .

This endorsement forms a part of the policy to which it is attached."

In June 1957 plaintiff Dr. Antles began his practice as a chiropractor at 220 East Central Avenue in La Habra, where

he continued to practice until after the incident herein. He did not carry any malpractice insurance—he was aware that the liability policy which he had did not cover malpractice. In the latter part of 1957 James A. Baird became his patient and was given heat treatments by using a thousand-watt infrared lamp that was on "a pulley effect" at the outer end of a wall bracket which was nailed to the wall—at a place near the treatment table. By means of the pulley, the lamp at the outer end of the bracket could be lowered or raised above the treatment table; and by means of a bracket swivel (presumably on the wall), the bracket could be swung back and forth above the table (to and from the wall)—that is, when the lamp was not in use it could be swung toward the wall and out of the way. The lamp and bracket had been installed in the office prior to the time plaintiff purchased the office equipment (June 1957) from a chiropractor who formerly practiced there.

On January 27, 1958, while the insurance policy was in effect, and pursuant to a scheduled appointment for an infrared heat treatment, Mr. Baird went into plaintiff's office. Preparatory to receiving the treatment he removed his shirt and then lay on the treatment table, facing downward.

Dr. Antles testified, in part, as follows: Before applying the lamp heat in the treatment, it was necessary for him to make an adjustment of the lamp, that is, to swing the lamp out from the wall and raise or lower it to its proper height for treating Mr. Baird, which height was about 6 feet above him. It was a radiating-type lamp which would burn a patient if he were under it for too long a period of time. The use of the lamp involved a supervision problem for the doctor. The adjustment of the height of the lamp from the patient, and the duration of time the patient stayed under the lamp, required the supervision of Dr. Antles in his capacity as a chiropractor. The doctor adjusted the lamp in the manner above indicated, and proceeded to give the heat treatment. It was his intention to have the patient on the table about 15 minutes for the treatment. While the heat was being applied, the doctor remained in the treatment room and kept observing the "duration of time" of the treatment. After the patient had been undergoing the treatment for about five minutes, and while the doctor was standing at the sink washing his hands, he saw the bracket "just give away from the wall," come off the wall, and fall across the table; and the lamp hit and burned the patient's back.

The doctor testified further that after the accident he ascertained that the bracket had not been nailed to the studding of the wall, but had been nailed to the plaster.

As hereinabove indicated, the injury sustained by the patient Mr. Baird, from the falling bracket and lamp, was the basis for the municipal court judgment in favor of Mr. Baird and against Dr. Antles.

As above indicated, appellant Dr. Antles contends in effect that the court erred in determining that there was no insurance covering his liability to Mr. Baird arising from said incident. He argues that the act of affixing the bracket and lamp to the wall was a mechanical act and was not a professional service; that there was no evidence of the failure of any portion of the lamp which is moved or adjusted during the treatment; and that, on the contrary, the record indicates that the falling of the lamp was due to its becoming detached from the wall—from an integral part of the building—at a point where the lamp was supposed to be rigidly affixed.

Appellant cites *D'Antoni* v. *Sara Mayo Hospital* (La. App.) 144 So.2d 643, wherein the comprehensive liability insurance policy, issued to a hospital, contained an exclusionary endorsement that the policy did not apply to injury due to rendering or failure to render medical service or any service of a professional nature. In that case, after a doctor had ordered that side rails be kept on a patient's hospital bed, a nurse failed to replace a rail that had been removed, and as a result thereof the patient fell out of bed and was injured. It was held therein that the insurance company was liable under the policy—that the matter of replacing the rail was not professional service under the exclusionary endorsement. The court therein said the raising of the side rail was purely a mechanical act which any unskilled person could perform; that while the initial decision to attach the side rails to the bed may have involved professional judgment, once the attending physician issued the order the professional aspect of it was complete.

Defendant insurance company cites *Knorr* v. *Commercial Cas. Ins. Co.*, 171 Pa. Super. 488 [90 A.2d 387], wherein the comprehensive liability insurance policy, issued to plaintiff who operated a beauty shop, contained an exclusionary endorsement that the policy did not apply to the rendering of any professional services ''by any person, including any barber, manicurist, . . . or other attendants.'' While a cus-

tomer of the shop was sitting under a mechanical hair-dryer, the dryer fell on her head. It was held therein that the insurance company was not liable—that the matter of drying hair by means of the mechanical device was a part of the "professional services" excluded by the policy.

Defendant also cites *Harris* v. *Fireman's Fund Indemnity Co.*, 42 Wn.2d 655 [257 P.2d 221], wherein the comprehensive liability insurance policy, issued to an osteopath, contained an exclusionary endorsement that the policy did not apply with respect to injuries arising out of any malpractice, error, or negligence committed in the performance of professional services. While a patient of the osteopath was on a table, undergoing a treatment, the table collapsed and the patient was injured. The table fell because the safety catch on it was defective. It was held therein that the insurance company was not liable—that the injury arose out of malpractice, error, or negligence in the performance of professional services. The court said that the findings show that the table which was being used was no ordinary piece of office furniture, that it was especially designed to enable the osteopath to give his patients the type of treatment he was licensed to give, and it was as much a part of his professional equipment as an operating table is part of a surgeon's professional equipment.

It thus appears that in the *D'Antoni* case, *supra,* cited by appellant, the injury (resulting from the failure of the nurse to replace the bed rail) *did not* occur during the performance of professional services; and that in the *Knorr* and *Harris* cases, *supra,* cited by defendant, the injuries (resulting from the defective hairdryer and the defective table) *did* occur during the performance of professional services.

In the present case, the lamp was the principal article or instrument used in giving the treatment, and preparatory to using it the doctor was required, in the exercise of his professional skill and judgment, to swing it from the wall to a proper place over the table and to adjust it to the proper height above the patient; and while the lamp heat was being applied, the doctor was required, in the further exercise of his professional skill and judgment, to observe the time during which the heat was applied, so that only the proper amount of heat for the specific treatment would be applied— and that a burn would not result from too much heat. Also in the present case, the doctor remained in the room while the

lamp heat was being applied. As above stated, the doctor testified that the adjustment of the height of the lamp from the patient, and the matter of the length of time the patient stayed under the lamp, required his supervision in his capacity as a chiropractor. The finding of the trial court that the lamp was adjusted as a part of the doctor's professional services is supported by the evidence. It is apparent that the injury occurred during the performance of professional services. The trial court correctly determined that the defendant insurance company provided no coverage under its policy for the incident involving the patient, Mr. Baird.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied November 15, 1963.